M. H. HOUSTON ET AL. V. FARMERS & MERCHANTS' INSUR-
ANCE COMPANY.

FILED MARCH 5, 1902. No. 11,266.

Commissioner's opinion, Department No. 3.

1. **Insurance: PREMIUM: CREDIT: SUSPENSION OF POLICY.** Where
credit is extended and a note taken for the premium to be paid
for a policy of insurance, and both the note and the insurance
policy provide that in case the note is not paid at maturity the
policy shall be suspended, inoperative and of no force or ef-
fect so long as the note or any part thereof remains due and
unpaid, the insurance company can not be held liable for a
loss occurring after the maturity of the note and while the
same is unpaid.

2. ————: **CONDITION IN POLICY.** The policy contained a further pro-
vision to the effect that "in case of any loss of said property,
either partial or total, while said note, or any part thereof,
remains overdue and unpaid, this company shall not be liable
for such loss, nor shall the payment of said note or the re-
ceiving or retention of the proceeds, or any part thereof, by
this company, render it liable for any loss occurring while said
note, or any part thereof, remains due and unpaid; nor shall
such payment or retention be construed to be a waiver of any
condition in this policy or application. The payment of the
premium, however, revives this policy and reinstates the same
for the remainder of the term." *Held,* that the collection of
the premium after a loss by the insured, which occurred after
the maturity of the note, and while the same was unpaid, while
it would reinstate the policy for the remainder of the term,
would not constitute a waiver on the part of the company such
as to make it liable for the loss.

ERROR from the district court for Pawnee county. Tried
below before LETTON, J. *Affirmed.*

*Story & Story,* for plaintiffs in error.

*Halleck F. Rose* and *Frank A. Barton, contra.*

DUFFIE, C.

January 10, 1895, the defendant in error issued to the
plaintiff in error a policy of insurance to run five years,
taking a note maturing December 1, 1895, for the premium.

The policy insured the plaintiff on his dwelling-house in the sum of $500 and on his barn in the sum of $1,000 against loss by fire and tornadoes. The note contained the following provision: "And it is hereby agreed that the company shall not be liable for any loss or damage that may occur to the property insured while this note, or any part thereof, shall be overdue and unpaid." The policy also contained these conditions: "If a note be given for the premium on this policy, or any part thereof, it is mutually agreed and understood by and between the assured and this company, that in case said note, or any part thereof, be not paid at maturity, this policy shall be suspended, inoperative, and of no force or effect so long as such note, or any part thereof, remains overdue and unpaid. And in case of any loss of said property, either partial or total, while said note, or any part thereof, remains overdue and unpaid, this company shall not be liable for such loss, nor shall the payment of said note or the receiving or retention of the proceeds, or any part thereof, by this company, render it liable for any loss occurring while said note, or any part thereof, remained overdue and unpaid; nor shall such payment or retention be construed to be a waiver of any condition in this policy or application. The payment of the premium, however, revives this policy and reinstates the same for the remainder of its term only." On May 17, 1896, after the maturity of the note, which was still wholly unpaid, the plaintiff's barn was injured by a wind-storm to the amount of $600. The company was informed of this loss, but no proof of loss was made, and no further action taken in relation thereto. After the loss the company demanded payment of the premium note, and on September 23, 1897, brought suit thereon before the county judge of Pawnee county. After suit brought, the plaintiff in error offered to confess judgment for $26 and costs, that amount being, as plaintiff in error claims, the customary short-rate premium on the policy up to the time that his barn was injured by a wind-storm, which offer was refused by the company. Plaintiff in error thereupon filed his bill of

particulars, claiming $575, being the amount he claimed due him on account of damage to his barn after giving the company credit for the full amount of the premium note. The company moved to strike this answer from the files for the reason that the court was without jurisdiction, whereupon the plaintiff in error amended by reducing the amount of his claim to $200, and the motion to strike was thereupon overruled. On a trial in the county court, judgment went against the insured for $37.63, the full amount due upon the premium note, and he thereupon appealed to the district court. In the district court the insured filed an answer setting up his policy and the loss thereunder, and asking judgment against the company for $565, the amount of his loss less the amount of the premium note which he admitted as an offset to his claim for damages. This answer was stricken from the files on the ground that the jurisdiction of the court below was limited to $200; whereupon, the insured filed an amended answer asking for judgment on the policy in the sum of $200 only, and attorney's fees and costs. The company demurred to so much of the answer as set out a claim for damage under the policy, and this demurrer was sustained by the court and judgment entered against the insured dismissing his counter-claim, and thereupon the court gave judgment against the insured for the amount of the note and interest and cost of suit, and from this judgment he has taken error to this court.

There is no doubt of the right of an insured to have his policy canceled upon the terms provided by section 42, chapter 43, of the Compiled Statutes, which is as follows: "Any person, company, association or corporation transacting the business of fire, or fire, wind, storm, and tornado insurance, in this state, shall cancel any policy of insurance hereafter issued or renewed, at any time, by request of the party insured, or his legal representative, and shall return to the said party, or his representative, as aforesaid, the net amount of premium received by the company, after deducting the actual compensation of the

agent or solicitor for securing the issue of said policy, and also deducting the customary short-rate premium for the expired time of the full term for which said policy was issued or renewed, anything in the policy to the contrary notwithstanding."

The transcript from the county court recites the following in relation to the offer to confess judgment: "October 15, 1897, ten A. M., case called, plaintiff and defendant M. E. Houston present, and thereupon the defendant, M. E. Houston, filed her offer to permit judgment to be entered in favor of plaintiff for $26 and costs to this date, and the plaintiff refusing to accept said offer, this cause came on for hearing on the pleadings and the evidence." There is nothing in this record from which we can determine whether the offer to confess judgment included, in addition to the customary short-rates, the actual compensation paid to the agent or solicitor for securing the issue of the policy, and, this being so, the presumption obtains that the offer was not sufficient. But, even if it did, we are entirely certain that an offer to confess judgment for the amount does not comply with the provisions of our statute in relation to the cancelation of policies. By the wording of the statute, the legislature seemed to have had in mind the cancelation of policies that had been paid for in cash only, but we are inclined to believe that a policy issued upon a credit where a note is taken for the premium is fairly within its meaning. In such cases, however, the insured can not claim a cancelation of his policy by confessing judgment for the amount of the premium computed at the customary short-rate, but he must actually pay or tender such sum to the company, when he will be entitled to a return of his note. No offer of payment being made in this case, the plaintiff in error was not entitled to have his policy canceled and note returned.

It is insisted in a very excellent brief filed by the plaintiff in error that the company, by refusing to accept judgment for what was earned upon the note, and by insisting upon payment of the full amount thereof, waived the suspension of the policy by reason of the default in payment

of the note and became liable for the loss which occurred during such default. There are many cases holding that, where the company insists upon the payment of the premium after loss has occurred, such collection is based upon an implied waiver of the forfeiture. These are cases, however, where the policy provides that it shall become void if the premium be not paid when due. In such cases, the non-payment of the premium at the stipulated time voids the policy at the option of the company, and it is the duty of the company to declare this option when the default occurs, and it waives the forfeiture in case it receives or enforces payment after the default. It can not occupy the attitude of demanding or receiving pay upon a contract, and at the same time insist that the contract is not in force and of no validity. The case under consideration is of a different character. It is nowhere stipulated that the policy shall become void on account of a failure to pay the premium note at maturity. The parties have contracted in this case that a failure to pay the premium note when due merely suspended the policy during such default, and that it may be reinstated at any time within the life of the policy by payment being made. In *Phenix Ins. Co. v. Bachelder*, 32 Nebr., 490, Judge NORVAL, in discussing a contract similar to the one now under consideration, remarked: "It is obvious that the failure to pay the premium note, at maturity, suspended the policy until payment was made. It could have been revived, for the balance of the term, by making full payment at any time before the loss. This, as we have seen, he failed to do. True, after maturity of the note, he paid $15 thereon, but this did not give him the right to avail himself of the benefits of the contract of insurance. Nothing short of full payment, or a waiver of the stipulation in the policy, could have the effect to remove the suspension caused by the failure to pay the note. The clause referred to is not unreasonable. It is but fair and just that while the insured is in default of the payment of his note, the company should not be liable for loss, when the parties have so agreed. We have no right to make a new contract for them, or refuse to en-

force the one they have made. To hold that the policy was in force, at the time of the fire, would be to set aside and disregard the plain stipulation of the parties." It is true that in that case no waiver on the part of the company was pleaded or shown, but the parties in this case have stipulated that: "In case of any loss of said property, either partial or total, while said note, or any part thereof, remains overdue and unpaid, this company shall not be liable for such loss, nor shall the payment of said note or the receiving or retention of the proceeds, or any part thereof, by this company, render it liable for any loss occurring while said note, or any part thereof, remained overdue and unpaid; nor shall such payment or retention be construed to be a waiver of any condition in this policy or application." The parties have made their own contract. The amount of the premium was undoubtedly based upon the terms and conditions contained in the policy. There is no complaint that it was not fully understood by the insured, and it contains nothing, so far as we are able to discover, that is contrary to the provisions of our statute, or that contravenes public policy. The plaintiff in error knew that a default in the payment of his premium note suspended the policy. He provided that it might again be reinstated when payment was made. Whether that payment be voluntary or enforced, the policy is revived from the date of payment. This is the contract of the parties, and we have neither the right nor the power to change it or amend it in any form. That notes made upon the conditions of the one in suit may be enforced is held in *Phenix Ins. Co. v. Rollins,* 44 Nebr., 745, and *McEvoy v. Nebraska & Iowa Ins. Co.,* 46 Nebr., 782.

We discover no error in the record, and recommend that the judgment be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.