No. 22,328.

M. L. EIKELBERGER, *Appellee*, v. THE INSURANCE COMPANY OF NORTH AMERICA, *Appellant*.

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Premium Note Not Paid When Due—Insurance Not in Force While Note is in Default.* Where a fire insurance contract provides that the insurance company shall not be liable for losses occurring while the payment of the insurance premium note is in default, such provision is reasonable, and must be enforced according to its terms.

2. SAME—*Terms of Policy—Premium Note in Default—No Liability for Loss While Premium Note in Default.* Where a fire insurance contract provides that the insurance shall be suspended while payment of the promissory note given for the insurance premium is in default, but that payment of such past-due premium note shall revive the policy for the remainder of the original period of insurance, a fire loss occurring during the time the payment of the promissory note was in default does not constitute a liability against the insurance company.

3. SAME—*Notice of Loss to Soliciting Agent—No Notice to Company.* Notice by the holder of an insurance policy to a soliciting agent and collector of debts for an insurance company, informing him that the assured had suffered a loss, does not constitute notice to the company, especially when that agent, whose powers were thus limited, did not inform the company.

4. SAME—*Payment of Defaulted Premium Note After Loss—Company Not Liable for Loss.* Payment of a defaulted premium note after the maker of the note suffered a fire loss does not render an insurance company liable for the loss, where the insurance contract provides that such payment merely revives the insurance—such revivor to begin from the time of payment.

5. SAME—*No Waiver of Nonliability for Loss.* An insurance company which accepted a promissory note for a contract of insurance, and furnished insurance thereunder until default was made in the payment of the note, does not waive its right of nonliability for a loss occurring after such default by temporarily retaining the note until the insurance policy is surrendered.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed December 6, 1919. Reversed.

*George T. McDermott, Robert L. Webb,* both of Topeka, *Robert Stone, E. H. Gamble,* both of Kansas City, Mo., and *H. O. Caster,* of Bartlesville, Okla., for the appellant.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action on a fire insurance policy. The payment of the insurance premium was in default at the time of the fire, and the defendant denied liability.

The plaintiff is a Scott county farmer. On May 5, 1916, he procured from defendant a three-year fire insurance policy, which insured his horses, cattle, farm machinery, grain and feed. In payment for this policy plaintiff executed and delivered to defendant his promissory note for $39.40, payable December 1, 1916. The insurance policy contained the following provision:

"But it is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, given for the premium, remains past due and unpaid. . . . And it is expressly agreed that . . . a receipt from the said Chicago office of the company for the payment of any past due note or notes must be received by the insured before there can be a revival of the policy, such revival to begin from the time of said payment, and in no case to carry the insurance beyond the end of the original term of this policy."

The plaintiff failed to pay his note when due and had not paid it when on the night of February 22, 1917, a fire consumed most of the property which had been covered by the insurance. At 2 a. m. the following day plaintiff went to Salina to see W. D. Mitchell, the defendant's agent, about his insurance, but failed to meet him. The plaintiff testified that the day before the fire he had sent his check to his son in Salina,

together with a new note. for $20, to pay the defaulted insurance note, and that the son gave the defendant's agent the check and new note some twenty-four hours after the fire, and that the son at the same time told the agent that his father had suffered a loss.

Other details of some possible significance are, that on December 15, 1916, the defendant sent plaintiff's defaulted note to Mitchell at Salina for collection. On January 16, 1917, Mitchell wrote to plaintiff, inclosing a new note for $20, requesting plaintiff to sign and return it and to send therewith his check for the balance, $19.40, saying, also, "We will then extend the note to August 1, 1917. Now please let me hear from you by return mail." When Mitchell received plaintiff's check and note after the fire, he forwarded them to the defendant, but the defendant company had not then learned of the fire, unless the statement of plaintiff's son to Mitchell that his father had a loss was notice to the company.

Mitchell was a soliciting agent for the defendant. His duties were to procure and forward applications for insurance to the company. Policies were issued by the company and sent to him and he countersigned and delivered them. If he took notes in payment for insurance, he forwarded them to the company. He testified—

"That if the premium notes were not paid about the 15th of the month after they were due, they were returned to him for collection and that he procured settlement for the notes either in money or renewals or both and made return to the company.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Who gave you that [plaintiff's second] note? . . . A. The son I think, that is the boy.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. He told me that his father had a loss.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Did he tell you the character of the loss? A. No; he didn't give me any information. He just simply said that he had a loss.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Well, why I didn't report it, they got a regular form for reporting it, and that requires considerable information of the amount of property, what kind of property and so on, a full description, so they have a little history of it, and I didn't have a particle of history. That is the reason why I didn't report it, and I thought he would attend to that himself.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. I don't remember exactly what all he did tell me; but there wasn't

much information in regard to the property, only that his father had had a loss."

When the defendant learned the true state of affairs, it wrote to plaintiff—

"You well know that under the conditions of the policy this company is not liable for loss that may occur while a premium note is overdue and unpaid. Had you not suppressed the information of the occurrence of the fire, but dealt fairly with us, we would not have accepted your money in payment of the delinquent premium note, and are returning herewith Twenty (20) Dollars in currency, as well as your note for the balance of the original premium note. Because of the happening of the fire, we have no intention of pressing the collection of the original note, and will hold it simply for the surrender of the policy. If the policy is returned to us we will mark your premium note void, and mail it to you."

The jury's verdict was in favor of plaintiff, and the trial court gave judgment thereon.

Such of defendant's assignment of errors as need consideration will be noted.

Under the terms of this insurance policy and the facts developed in relation thereto, was the plaintiff's property covered by insurance at the time of the fire? One of the provisions of the contract of insurance between the plaintiff and defendant was, that the defendant was not to be obligated to plaintiff for any loss occurring while the plaintiff was in default of payment of his premium note. There is nothing unreasonable about that provision. (19 Cyc. 773, 774.) An insurance company cannot pay losses except out of the money it collects from its patrons. The homely saying that "one cannot get blood out of a turnip" is just as applicable to insurance companies as to other sorts of business. By the terms of the contract between the parties, the plaintiff's property was insured absolutely until December 1, 1916. If he paid his note on or before that date, his insurance was to continue in force for the remainder of a three-year period. If he defaulted in that payment, the insurance was to be in abeyance—the company was not to be liable for any loss that might occur while the premium note remained in default. But by the specific terms of the contract, if after default of payment the premium note should later be paid, the insurance was to be revived—"such revival to begin from the time of said payment."

Eikelberger v. Insurance Co.

Unless some of the matters urged by appellee will bridge this gap, it seems that the plaintiff ought not to recover. (*Continental Ins. Co. v. Daly, Adm'x,* 33 Kan. 601, 7 Pac. 158; *Lightner v. Insurance Co.,* 97 Kan. 97, 101, 154 Pac. 327; *Hill v. Farmers' Mutual Fire Ins. Co.,* 129 Mich. 141; *Houston v. Farmers & Merchants' Ins. Co.,* 64 Neb. 138; *Southern Mutual Ins. Co. v. Taylor,* 33 Grattan, [Va.] 743; 19 Cyc. 773.)

In *Continental Ins. Co. v. Daly, Adm'x,* supra, Justice Johnston, now Chief Justice, speaking for the court, said:

"That the provision prescribing a forfeiture of the policy in case of the failure to pay the premium note when it became due was reasonable and just, and a contract the parties were capable of making, cannot be denied. The premium is the consideration that induces the insurer to assume the risk; its prompt payment is essential to the success of the insurance business, and necessary to enable insurance companies to comply with the contracts entered into with their patrons. To promote punctuality in the payment of premiums, and enable them to meet their engagements, insurance companies usually contract with the assured that a neglect to pay the premium or premium notes when they fall due, will, if a loss occurs during the default, operate as a forfeiture of the insurance money. In a policy containing a stipulation of this character, time is material and of the essence of the contract, and a failure to make payment at the time therein agreed, where there is no waiver of that condition of the policy, will absolve the insurance company from liability." (p. 605.)

It is argued for appellee that the efforts of Mitchell, defendant's solicitor and collection agent, to secure collection or renewal of the plaintiff's defaulted note, was inconsistent with defendant's contention that the insurance was suspended after December 1, 1916. We think not. The effect of Mitchell's proposition, if accepted, was clearly outlined in the contract of insurance—that payment would renew and reinstate the insurance for the remainder of the three-year term. Moreover, Mitchell's offer to accept part cash and a renewal note as satisfaction of the defaulted note required a prompt answer. "Please let me hear from you by return mail," he said. This offer, which was dependent upon a prompt response, was ignored for several weeks. An offer unaccepted is of no consequence; and to be effective something more potent than this will have to be developed affecting the contract provision that the company should not be liable for losses occurring while the payment was in default.

What about a waiver? In *Insurance Co. v. Ferguson*, 78 Kan. 791, 798, 98 Pac. 231, the defendant insurance company, after notice of the fire and after having received the report of its own adjuster, accepted payment of a premium assessment, and was held to have knowingly waived the forfeiture. Moreover, in that case there was a shifting of the grounds of its denial of liability. It is argued that the agent, Mitchell, was authorized to collect the entire premium, and that he did so and sent the check and renewal note to the company, and that the agent knew something about the plaintiff's loss at the time he accepted the check and renewal note. This does not constitute a waiver. The plaintiff owed the original note. There was a valid consideration for it. He had received insurance protection from May 5 until December 1 for that note. After default, he had but to pay it to effect a restoration of his insurance for the remainder of a three-year term, such restoration beginning with the date of payment. The contract between the parties leaves practically nothing for the court to interpret. The insurer and insured made their own bargain, and so long as the court discovers nothing unreasonable about that bargain it is bound to respect and enforce it. Mitchell was not such an agent of the company as to bind the company with notice of the fire. The company had other agents to attend to matters of fire losses, and one of these was sent to the scene of the fire to investigate the loss; and it has been settled in this state that notice to an agent of limited powers does not bind the agent's principal on matters wholly unrelated to that agent's powers.

"A local soliciting agent without authority to write or issue policies, but who merely procures applications, collects premiums and sometimes delivers policies when payments are made, is not a general agent of the insurer, and his knowledge that other insurance had been subsequently taken is not chargeable to the insurer; nor did the insurer herein in any way waive or abrogate the condition which was violated by the insured." (*Pettijohn v. Insurance Co.*, 100 Kan. 482, syl. ¶ 2, 164 Pac. 1096.)

If this contention needed a further answer, it might be observed that Mitchell knew next to nothing about the loss. The plaintiff's son merely told him there had been a loss, but neither the nature nor extent of that loss was communicated to Mitchell, and the latter gave a manifestly sufficient reason why he did not report the loss to his company.

Furthermore, as the insurance was suspended when the loss occurred, Mitchell did not need to inform the company, for the only effect of the payment of the delinquent note would be to revive the policy for the remainder of the three-year term—such revivor beginning with the date of payment.

It is finally urged, as an element of waiver, that the company still retains the original note. The company's attitude touching that note is outlined in its letter to plaintiff quoted above. That attitude is more favorable to plaintiff than exact justice requires. Part of the premium was earned before the note was in default, and while the insurance contract was still in force. If defendant does cancel and deliver the original note on surrender of the policy, it will have received nothing for having carried plaintiff's insurance from May until December.

The court is constrained to hold that a painstaking search of this record fails to disclose the elements essential to a waiver.

"A waiver of a contract right is a voluntary and intentional renunciation of it, and some positive act or some positive inaction inconsistent with the contract right is necessary to create the waiver. (*Long v. Clark,* 90 Kan. 535. 135 Pac. 673; 40 Cyc. 253-263; 8 Words and Phrases, 7375-7381.)" (*Street Lighting Co. v. City of Wichita,* 101 Kan. 452, 460, 168 Pac. 1090.)

The judgment is reversed, and the cause is remanded with instructions to enter judgment for defendant.