## WILLIAM J. CARROLL, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, Respondent.

### (180 N. W. 523.)

**Insurance — forfeiture of policy for nonpayment of premiums held waived by insurer.**

1. Where a policy of life insurance provides for payment of the annual premium in advance, and the first premium was paid, thus operating to keep the policy in force for a year, and, on the date when the second annual premium became due, part of the premium was paid, and a promissory note taken for the remainder, executed by the insured and the beneficiary, and payable within three months thereafter, said note containing several stipulations and provisions, among which was one to the effect that the note, if not paid when due, would thereafter automatically cease to be a claim against the maker, and that all rights under the policy should be the same as if the cash had not been paid nor the agreement made; and where more than thirty days after the time when note became due, the company, by letter to the beneficiary, indicated its willingness to receive payment, and to take a renewal note for part of one of the notes, it is *held*, in these and other circumstances referred to in the opinion and for reasons stated therein, the company waived forfeiture of the policies.

**Insurance — representations of agent that there was no need for paying premium held waiver of forfeiture.**

2. Where an agent of the defendant insurance company, in the circumstances, and under the authority from his principal, referred to in the opinion, represented to the beneficiary just before the due date of a promissory note given on the date the premium became due for adjustment of part of the premium, the balance having been paid in cash, that the company was making arrangements, or had made arrangements, so that the government would take care of these policies, and that the company was going to make a record in the war, by showing the people that they were right and that they would take care of all premiums of a man in the service, the insured being in the military service of the United States; and where it appears that the beneficiary relied upon

·that statement, it is *held,* the defendant waived any right of forfeiture, for the alleged nonpayment of the balance of the premium, for the premium year referred to in the representation.

Opinion filed November 13, 1920.   Rehearing denied December 14, 1920.

Appeal from the District Court of Ward County, *K. E. Leighton,* J. Reversed and remanded.

*Palda & Aaker,* for appellant.

There was a waiver by their duly appointed and acting agent Kane, which waiver was a valid and binding one as far as the defendant company was concerned.   McDonald v. Equitable L. Ins. Co. (Iowa) 169 N. W. 352; Ins. Co. v. Eggelston, 96 U. S. 572, 24 L. ed. 841; Union L. Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. ed. 617.

The powers of the agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.   Beebe v. Ins. Co. 25 Conn. 51; Lycoming Ins. Co. v. Schollenberger, 44 Pa. 259; Beal v. Ins. Co. 16 Wis. 241; Davenport v. Ins. Co. 17 Iowa, 276.

The condition in a policy or premium notes of forfeiture of policy for nonpayment of premium may be waived.·  Hall v. Dakota Ins. Co. (S. D.) 158 N. W. 449.

A forfeiture may be waived, as well by an agreement made for extending a premium note after its maturity as by one made before.   Ins. Co. v. Norton, 96 U. S. 234, 24 L. ed. 689.

Waiver is ordinarily a question for the jury, and is rarely to be inferred as a matter of law.   Beauchamp v. Retail Merchants F. Ins. Co. 38 N. D. 483, 165 N. W. 545:

*Newton, Dullam, & Young (James H. McIntosh,* of counsel), for respondent.

There is nothing mysterious about a contract of insurance; it required the consent of both parties to the same thing as in any other contract.   Stevens v. Ins. Co. 87 Iowa, 283; Weidenaar v. New York Life, 94 Pac. 1.

No other or different rule is to be applied to a contract of insurance than is applied to other contracts.   Rathbun v. New York Life, 30 Idaho, 34; Quinlan v. Phœnix Mutual, 140 N. Y. 79; Dwight v. Ger-

mania Life, 103 N. Y. 341; Foote v. Ætna Life, 61 N. Y. 571; Liver-pool & L. G. I. Co. v. Kearney, 180 U. S. 134.

GRACE, J.   This is an action to recover upon an insurance policy in the sum of $3,000, issued and delivered by defendant to plaintiff, on the 7th day of July, 1916.   The annual premium was $57.30.

On the 19th day of July, 1918, in France, and while a private in Company I., 16th Infantry, American Expeditionary Forces, William G. Carroll died.   The plaintiff is the father of Wm. G. Carroll, and is the sole beneficiary under the policy.

The complaint is in the ordinary form, and, among other things, alleges that, until the time of the death of Wm. G. Carroll, all premiums which accrued were paid when they accrued; and that he performed all the agreements and conditions of the policy.

It is further alleged that during the month of September and prior to the 20th of that month, 1917, the plaintiff was informed and told by Charles Kane, the agent of the defendant company, that the government would take care of the premiums on soldiers' life insurance poli-cies, and that the New York Life Insurance Company had made arrangements to take care of these; that, at various times, between the 1st day of October and the 12th day of December, 1918, plaintiff noti-fied the defendant of the death of Wm. G. Carroll, and demanded of them a form for proof of claim, but that it neglected, failed, and re-fused to furnish it to the plaintiff; and that on about December 12, 1918, the plaintiff notified the defendant, by registered mail, that the said Wm. G. Carroll died in France, on July 19, 1918.

The defendant interposed an answer, which included a general de-nial, admitting, however, that it is a life insurance corporation, exist-ing in and by virtue of the laws of the state of New York; and that it issued the policy of insurance in question, and that Carroll died as alleged in the complaint; and admits receiving the notices alleged to have been sent to it by plaintiff.

It further, in substance, alleges that the policy was made in consid-eration of the payment of the first premium of $57.30, constituting pay-ment for the period terminating on the 23d day of June, 1917, and of the payment of a like sum on the 23d day of June, and every year there-after during the continuance of the policy, until the death of the in-

sured; and that it was provided in and by the terms of the policy that all premiums were payable on or before their due date, at the home residence of the defendant, in the city of New York, or to an agent upon delivery of a receipt signed by the president, a vice president, a second vice president, a secretary or the treasurer of the company, and countersigned by the agent; and that the payment of a premium should not maintain the policy in force beyond the date when the next premium became due.

That when the June 23, 1917, premium on said policy became due, said plaintiff and said Wm. G. Carroll, under date of, to wit, the said 23d day of June, 1917, made and delivered to this defendant their special written note or extension agreement, commonly called by this defendant a "blue note," by the terms of which they there and then paid the defendant $12.30 in cash, and promised to pay at the First National Bank of Grand Forks, North Dakota, on or before September 23, 1917, without grace, and without demand or notice, $45, with interest at the rate of 5 per cent per annum, and in which it was therein and thereby further agreed that although no part of the premium due on the 23d day of June, 1917, on said policy had been paid, the insurance thereunder should be continued in force until midnight of the said 23d day of September, 1917, and that if said sum so agreed by them to be paid was paid on or before said 23d day of September, 1917, said payment, together with said cash, would then be accepted by said defendant as payment of said premium, and all rights under said policy would thereupon be the same as if said premium had been paid when due; but that if said sum was not paid on or before said 23d day of September, 1917, said note agreement should thereupon automatically cease to be a claim against the makers thereof, and said defendant should retain said cash as part compensation for the rights and privileges thereby granted, and all rights under said policy should be the same as if said cash had not been paid nor said agreement made; that neither said plaintiff nor said insured paid or caused to be paid the sum so agreed by them to be paid, or any part thereof, but defaulted in that behalf, and thereupon at midnight on said 23d day of September, 1917, said note agreement ceased to be a claim against the said makers thereof; that no part of said premium on said policy that became due and payable on said 23d day of June, 1917, ever was paid, and said policy

lapsed for the nonpayment of said premium; that only one premium on said policy, to wit, that premium that became due and payable on the 23d day of June, 1916, ever was paid, which maintained the insurance in force to June 23d, 1917, and no longer; and said policy was not maintained in force beyond the date agreed in said note or extension agreement, to wit, midnight of the said 23d day of September, 1917, and there was no insurance under said policy after said September 23, 1917.

A copy of said note or extension agreement is hereto attached marked exhibit "A" and made a part hereof.

The material facts in the case are as follows: On June 4, 1917, the insured enlisted in the military service of the United States, and on October 16, 1917, departed for France as a member of the 16th Infantry, and on the 19th day of July, 1918, died, as the result of wounds received in battle. Wm. G. Carroll, on June 23, 1916, became insured in the New York Life Insurance Company, in the sum of $5,000, one policy for $2,000, and one for $3,000. Separate actions were brought on each policy, and the actions are consolidated and tried as one, the issues being the same.

This action is upon the $3,000 policy, the premium for the first year was paid, and the policies were effective until June 23, 1917. On June 23, 1917, the second premium became due. On that date, $12.30 of the premium due on the $3,000 was paid, and a note for $45, due on or before September 23, 1917, was executed and delivered for the balance, and signed by the insured and also by the beneficiary, W. J. Carroll. This note is called by the insurance company, a "blue note."

On the same date, $8.20 was paid on the premium of the $2,000 policy, and a "blue note" for $30 due on or before September 23, 1917, was given for the balance. A copy of the note given in connection with the premium remaining unpaid on the $3,000 policy of insurance is as follows:

Pol. No. 4,954,618, June 23, 1917.

On or before September 23, 1917, after date, without grace, and without demand or notice, I promise to pay to the New York Life Insurance Company *Forty-five and no/100* dollars at First Nat. Grand Forks, N. Dak., value received, with interest at the rate of 5 per cent

per annum.   This note is accepted by said company at the request of the maker, together with *twelve and 30/100* dollars in cash on the following express agreement:   That although no part of the premium due on the 23d day of June, 1917, under policy No. *4,954,618* issued by said company on the life of William G. Carroll has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made, except only that the time within which the owner may make a choice of benefits after lapse, as provided in said policy, is hereby extended for three months after the due date of this note, but no longer; that said company has duly given every notice required by its rules or by the laws of any state in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note, it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.

$45.00     56/int.

Name: W. J. Carroll.              Name: William G. Carroll.
Address: Minot, N. D.             Address: Minot, N. D."

The policy contains this stipulation:   "All premiums are payable on or before the date due, at the home office of the company or to an agent of the company upon delivery of a receipt signed by the president, vice president, a second vice president, a secretary, or the treasurer of the company, and countersigned by said agent.   The premium is always considered as payable annually in advance, but by agreement in writing and not otherwise, and may be made payable in semi-annual

46 N. D.—38.

or quarterly payments." The premium here was payable annually in advance. The premium became due June 23, 1917. On that date a part of the whole premium then due was paid in cash, and a note given for the balance. That note was not only signed by the insured, but it was signed by W. J. Carroll, a person of admitted financial responsibility, and, we think, operated as an adjustment of the premium due on the 23d day of June, 1917, to such an extent as to prevent a forfeiture of the policies, when considered in connection with the following letter, written by the defendant, by its cashier Wm. J. Carroll, after the time when, under its contention, the policy lapsed because of the failure to pay the note on September 23d, and a copy of which was sent to its agent Kane. The letter reads:

Oct. 27, 1917.

*Copy sent to Kane.*

Mr. Wm. J. Carroll,
    Minot, N. Dak.
      Dear Sir:
        Re: Pol. 4,954,618.

I have your letter of October 24th, regarding the above policies. According to our records, the note of $30 became due September 23d, on Pol. #4,954,617, and a note of $45 due September 23d, on Pol. #4,954,618; and inasmuch as these notes were not taken care of at that date, the policies are at the present time lapsed on the books of the company. It is a simple matter for your son to apply for reinstatement.

Please forward the attached application for reinstatement to him, and have him answer each and every question, sign where indicated, his signature witnessed, and return with attached military and naval blanks, also signed by him.

I note that you state you will pay the $30 note, and in this connection forward a remittance of $30.50, representing the note, together with interest. In connection with the note of $45, we could not extend the full amount for sixty days, but you could forward a deposit of $5.75, and have your son sign the attached note of $40, due December 23d.

I trust the above meets with your approval, and that you will for-

ward these papers to your son and have them executed and delivered at an early date, in order that the matter of reinstatement may be referred to the home office for attention.

Yours truly,

ML:LW . Acting Cashier.

As we view the matter, this letter unquestionably recognizes that the two notes, given for the balance unpaid of the premium, which became due on June 23, 1917, were valid and subsisting obligations, after as well as before September 23, 1917; that these notes, together with the cash received, above mentioned, had the effect to maintain the policies in force until June 23, 1918, and prevent forfeiture thereof.

As we construe the letter, it means defendant was willing to receive payment of the $30 note, by receiving $30.50, the amount of the note and interest, and $5.75 as payment on the $45 note, and to take a new note for the balance, in the sum of $40, the 75 cents undoubtedly being for the accrued interest on that note.

The notes were not, by the defendant, regarded as of no further effect nor validity, after the 23d day of September, 1917, but, on the contrary, were regarded as valid obligations of the insured and the plaintiff beneficiary, for which the defendant could, and was willing to, receive payment in full, of one note and interest, and a part payment of the other, with a renewal note for the balance, in adjustment of the balance of the premium due on June 23, 1917. This would be in accord with the provisions of the policy, requiring the premium to be paid in advance, on the 23d day of June, 1916, and on the 23d day of June in each and every year thereafter.

We think the defendant's conduct as above set forth operated as a waiver of any forfeiture of the policies under consideration in this case.

"Circumstances proving that the party treated the contract as subsisting and not forfeited, a course of dealing consistent only with that hypothesis, and acts and declarations whereby the other party was induced to believe that the condition was dispensed with or forfeiture waived, it will be sufficient to preclude the setting up of the breaches of the condition as a defense to the contract of the party bound thereby." Viele v. Germania Ins. Co. 26 Iowa, 9, 96 Am. Dec. 83.

"Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads the party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon a forfeiture, though it might be claimed under the express letter of the contract." New York L. Ins. Co. v. Eggleston, 96 U. S. 572, 24 L. ed. 841; McDonald v. Equitable L. Ins. Soc. 185 Iowa, 1008, 169 N. W. 352.

On about the 20th of September, 1917, one Kane, the agent of defendant, had a conversation with the plaintiff, when a discussion was had in regard to the payment of the notes. The plaintiff testified that Kane told him not to worry about it, because the company was making arrangements, or had made arrangements, so that the government would take care of those policies, and that the company was going to make a record in this war by showing to the people that they were right, that they did not want to take advantage of anybody,—that is, something along that line; and that they would take care of all premiums of a man in the service, and that plaintiff relied upon that statement; and that this was before the notes became due; and that he did not worry about the payment of them, and that he might have paid them later if they had not put him where he was not worrying at all about them; that he believed that the company was carrying it, and that the government would take care of it, on Mr. Kane's statement; that the company did not return either of the notes, and never sent them for collection, nor returned the $20.50 he had paid.

Plaintiff further testified that he had made no demand for the return of the notes, and the company had not attempted to enforce payment.

The first premium had been remitted by Kane. Presumably he had collected it from the plaintiff and the insured. A copy of the letter of October 27th, above set forth, was sent to Kane, which would show, or tend to show, he had, in connection with the acting cashier, some authority in and about the collection of the premium for the second year. He may not have been a general agent, but, as was stated in the case

of McDonald v. Equitable L. Ins. Soc. supra, "life insurance agents are rarely, if ever, general, in the sense that they execute and deliver policies as is often done in the business of fire insurance; but they often have and exercise general control or power with respect to the particular branch of the business committed to their hands, and to that extent at least they are general agents. The fact that the agent represents a foreign company, and is the only visible or only convenient medium of approach to such corporation, has been recognized by the courts as a fact to be considered in such cases." Citing Union Mut. Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. ed. 617; Viele v. Germania Ins. Co. 26 Iowa, 9, 96 Am. Dec. 83, and note, to Johnson v. Ætna Ins. Co. 107 Am. St. Rep. 122.

The court further stated in the opinion that "the authority of agents, so far as the public with whom they deal is concerned, is controlled not so much by the terms of their employment, or even by the terms of the policies which they procure for applicants, as by the things which the principal permits them to do, and by the nature and extent of the business for which they are employed and permitted to carry on. But as we have before said, so far as the agent Blum is concerned, if he transcended his powers in promising an extension of time of payment, a few days, and thereby induced the insured to send him a check, and the cashier, acting for the company and knowing that fact, received and retained the money, it would be a ratification of the unauthorized act, and the forfeiture would thereby be waived unless that effect is found to be obviated either by prompt notice to the insured or by a subsequent valid settlement and discharge of this claim as hereinbefore indicated." Citing Hodsdon v. Guardian L. Ins. Co. 97 Mass. 144, 93 Am. Dec. 73.

It would seem that the agent Kane, having had something to do with remitting prior premiums, and having, by the letter of the defendant of October 27th, been considered as having some connection with the collection of the second premium, being the agent who wrote the insurance, or through whom the insurance was procured, that such were sufficient badges of authority from the principal to warrant the plaintiff in believing that he had authority and right to exercise power with respect to the collection of the unpaid premium for the second year.

· It is clear the plaintiff was financially able to pay the notes at any time. They were never sent for collection, and no demand for payment was made, and, in view of such representations by the agent Kane, we think the defendant waived any right of forfeiture, if any it had, by reason thereof.

On the 23d day of June, 1917, when the second premium became due and payable, defendant could have declined to receive anything less than the full amount of the premium in cash, and if it had done this, and had refused to receive the partial payment of the premium, and had not taken notes for the balance thereof, and its agent had not made any representations as above stated, which were relied upon by the plaintiff, and which it must be assumed caused the plaintiff not to pay the note, he being admittedly financially able to do so, then perhaps the policies of insurance would have been forfeited, unless maintained in force by article 4 of the Federal Law of March 8, 1918, entitled "An Act to Extend Protection to the Civil Rights of Members of the Military and Naval Establishments of the United States, engaged in the present war."

The purpose of that act was to provide a method of keeping in force certain kinds of life insurance of those engaged in the military service, and to prevent the forfeiture thereof, during their term of military service, and for one year after the termination thereof.

Congress being aware that those engaged in military service would have little time or opportunity, and perhaps lack financial ability, to look after such matters in such crucial times, generously provided this method whereby such premiums would be paid or taken care of by the government.

Certainly, if ever an act of Congress should receive a liberal construction, this should; for those for whose benefit it was enacted were offering to sacrifice their lives upon the altar of their country; and this insured and many thousands of others in the military service of the United States nobly did make the supreme sacrifice, and offered their lives in defense of our government and the principles upon which it is founded, and in defense of every legitimate business and business institution existing under the authority of the government, and receiving its protection, and this includes insurance companies.

Certainly, then, the act should not be technically construed. The

construction should be broad and liberal, and if thereby the policy of insurance can be held in force and effective, that construction should be given rather than a technical one, holding a forfeiture thereof.

Section 401 provides: "That the benefits of this article shall apply to any person in military service who is the holder of a policy in life insurance, *when such holder shall apply for such benefits on a form prepared in accordance with the regulations* which shall be prescribed by the Secretary of the Treasury. Such form shall set forth, particularly, that the application therein made is a consent to such modification of the terms of the original contract of insurance, as are made necessary by the provisions of this article, and, by receiving and filing the same, the insurer shall be deemed to have assented thereto, to the extent, if any, to which the policy on which the application is made is within the provisions of this article. The original of such application shall be sent by the insured to the insurer, and a copy thereof to the Bureau of War Risk Insurance.

"*The Bureau of War Risk Insurance shall issue, through suitable military and naval channels, a notice explaining the provisions of this article, and shall furnish forms to be distributed to those desiring to make applications for its benefits.*"

Section 402: "That the benefits of this act shall be available to any person in military service, in respect of contracts of insurance in force under their terms, up to but not exceeding the face value of $5,000, irrespective of the number of policies held by such person, whether in one or more companies, when such contracts were made, and a premium was paid thereon before September 1, 1917; but in no event shall the provisions of this article apply to any policy on which premiums are due and unpaid for a period of more than one year at the time when application for the benefits of this article is made, or in respect of any policy on which there is outstanding a policy loan or other indebtedness equal to or greater than 50 per centum of the cash surrender value of the policy."

Section 405: "That no policy *which has not lapsed for nonpayment of premium before the commencement of the period of military service of the insured,* and which has been brought within the benefits of this article, shall lapse or be forfeited for the nonpayment of premium, during the period of such service, or during one year after the expiration

of such period: Provided that in no case shall this prohibition extend for more than one year after the termination of the war."

The benefits of this act were available to the insured. He was in military service. He had $5,000 insurance, and no more. It was in one company and the premium was paid before September 1, 1917; and under § 405, there was no lapse of the policy for the nonpayment of the premium before the commencement of the period of military service of the insured, for he left for France on October 16, 1917, and was in the military service on and since June 4, 1917.

It is a general principle of law that every person is presumed to know the law, but that presumption does not obtain in the law that we are now considering; for reference to the language in § 401, which is underscored, will show that that section requires that the Bureau of War Risk Insurance *shall* issue, through suitable military and naval channels, a notice explaining the provisions of this article, and *shall* furnish forms to be distributed to those desiring to make application for its benefits.

Now it is clear that no one could desire to make application for the benefits until knowledge of the benefits were obtained; neither could one apply for the benefits until the forms were furnished; and it can hardly be said that one qualified to make application should be denied the benefits of the law enacted for his benefit, until it affirmatively appears that such notice, as directed by the law, was given through the military and naval channels, as the law requires, and that such notice, as so given, was such that one entitled to apply for benefits must have known of the law; and, further, before one entitled to apply for the benefits can be denied the protection of the law, it is mandatory under that law that a form or forms be distributed to him, so that he could make the application, first having notice and thus an opportunity to acquire knowledge of the benefits and provisions of the law applicable to him.

The government had arranged, through the operation of this law, which went into effect March 8, 1918, to take care of the premiums, where the premiums were not due and unpaid for more than one year when the application for the benefits of the law was made. There would not be, until after June 23, 1918, more than a year's premium due upon the policies in question. Up to that time, the insured could

have made the application, but he could not have done so unless he knew of the law, and it is not to be presumed that he knew of the law, unless it affirmatively appears the notice required by law was given; and he could not make the application until he received the blanks provided by law, and he never received those blanks, or, at least, there is no evidence that he did, and there is no proof that the notice required by law was given.

In these conditions, it is held there was no forfeiture of the policy; that it remained in full force and effect; that the premium due in 1918 was a proper charge against the government, under this law, and that there was no default in the payment of the premium which operated to cause a forfeiture of the policies.

It is further held that the court erred in directing a verdict for the defendant, and in holding there was no competent evidence of waiver of forfeiture. The judgment appealed from is reversed, and the case is remanded for a new trial.

The appellant is entitled to his costs and disbursements on appeal.

BRONSON, J. I concur in a reversal and remand for a new trial upon the grounds stated in the syllabus.

ROBINSON, J. I dissent.

BIRDZELL, J. (concurring specially). Unless it could be said as a matter of law that there was no evidence of waiver, the action of the trial court in directing a verdict must be reversed. I regard the case as exceedingly close. In view of all the evidence, however, which is amply set forth and discussed in the principal opinion herein, I am of the opinion that the question of waiver is one to be decided by the jury under proper instructions from the court. This question largely depends upon the authority of Kane and upon the statements made by him. In view of the evidence I do not think it can be said as a matter of law that Kane had no authority to make the representations. I therefore concur in the opinion of Mr. Justice Grace to the extent of its holding on these points, and in the reversal and remanding of the case for a new trial.

CHRISTIANSON, Ch. J. (dissenting).   If the statements which the evidence adduced by the plaintiff shows that defendant's agent Kane made, were chargeable to, and in contemplation of law the statements of, the defendant, then I believe there was a waiver on the part of the defendant company, and the policies involved in this litigation remained in force.   The serious question—and one which has caused me considerable difficulty—is whether Kane had authority to bind the defendant company.   After a careful consideration of the evidence I have reached the conclusion that there is no evidence from which it can reasonably be inferred that Kane had such authority.

ROBINSON, J., concurs.