No. 31,575

THEODORE ROTH, *Appellee*, v. THE NATIONAL FIRE INSURANCE COMPANY, *Appellant*.

(32 P. 2d 213.)

Opinion filed May 5, 1934.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *George Cox* and *Lawrence Weigand,* both of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker* and *Charles E. Jones,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a fire insurance policy. The defense was that at the time of the loss liability of defendant under the policy was suspended because of the nonpayment in full of a note given for a part of the premium. A jury was waived. Many of the facts were agreed upon. Judgment was for plaintiff, and defendant has appealed. We refer to the parties as they appeared in the trial court.

Defendant is a fire insurance company, having a western department at Chicago, an agent for this state at Topeka, and an agent, Harry Mellor, at Whitewater, in this state, who had authority to

solicit applications for fire insurance. Plaintiff is the owner of improved real property near Whitewater. Mellor solicited him for insurance and as a result plaintiff made written application for insurance on his property against loss by fire for a term of five years. This application was sent to the state agent, and the policy was issued May 27, 1930. In part payment of the premium for the entire term plaintiff executed his note, payable to the defendant, in the sum of $233.70, dated May 27, 1930, and due December 1, 1930. Mellor forwarded this note to the agent at Topeka, who sent it on to the western department at Chicago. The application, the policy, and the note each contained a provision in substance that defendant should not be liable on the policy while the note, or any part of it, was past due and unpaid. The effect of this provision, defendant contends, is that if the note became past due and unpaid all liability of defendant under the policy became automatically suspended until the note should be paid in full, and if and when such payment was made defendant automatically became again liable on the policy for the remainder of the term for which it was written. This contention appears to be supported by former decisions of this court (*Continental Ins. Co. v. Daly, Adm'x*, 33 Kan. 601, 7 Pac. 158; *Eikelberger v. Insurance Co.*, 105 Kan. 675, 189 Pac. 139), unless that provision of the policy contract had been waived or rescinded by the insurer. Plaintiff did not pay the note when it became due, neither did he pay it in full at any time prior to the loss for which suit was brought, which loss occurred in June, 1932. The amount of the loss, if defendant is liable under the policy, is stipulated.

Broadly speaking, the sole question in this case is whether the provision of the policy relied upon by defendant was waived by the insurer prior to the loss. The facts upon which such waiver depend may be stated as follows: On November 10, 1930, defendant, from its Chicago office, wrote plaintiff that his note would be due December 1, and called his attention to the provision of the policy that the company would not be liable thereon while the note was past due and unpaid. On December 15, 1930, defendant again wrote plaintiff that his note was due December 1, and again called his attention to the provision of the policy and the importance to him that he pay the note. On January 9, 1931, defendant wrote plaintiff as follows:

"We have on two previous occasions called your attention to your note under the above policy, which matured December 1, 1930, and is still unpaid.

"Your failure to make this payment is no doubt an oversight. Do you realize that under the provisions of your policy liability on the part of the company is suspended as long as the note remains overdue and unpaid?

"We are ready and willing to live up to our part of the contract and will of course, expect you to do your part which you agreed to when you signed the note. Your failure to comply with this request will force us to take drastic action which will be unpleasant as well as expensive for you.

"Forward remittance at once for $241.96 to cover the principal of $233.70 and interest of $8.26 and your policy will be immediately reinstated."

Apparently plaintiff answered this with a letter dated January 12, but we do not have that letter in the record. On January 16, 1931, defendant wrote plaintiff as follows.

"We are in receipt of your communication of January 12, 1931, advising us of your inability to meet payment of note of $233.70 due under the above policy since December 1, 1930.

"We have advised our agents, the Mellor Realty Company of your city to this effect and also suggested the plan of changing the above policy in order that you may have the advantage of paying yearly payments, and trust you will not fail to call upon them at once. We believe our suggestion will meet with your approval."

There appears to have been no action by plaintiff as a result of this letter. On April 11, 1931, defendant wrote plaintiff as follows:

"Several notices for payment of $233.70, principal, and $11.70, interest, have been sent to you covering above note, due December 1, 1930, but to date remittance has not been received.

"This note provides for expenses of collection and if you force us to place it with our legal department it makes added trouble and expense to you.

"We desire to retain our pleasant relations and trust you will let remittance to reinstate your policy come forward at once. If unable to remit full amount at this time see our agent or advise us promptly the best you can do and we will give this our further consideration."

And on the same date sent a copy of that letter to its agent Mellor, at Whitewater, with a notation thereon:

"Agent—Your coöperation in the early disposition of this item will oblige."

On receipt of that letter plaintiff went to see Mellor, and he testified:

"Told him I was unable to pay the whole amount and that they had told me to see him and he would make arrangements for the payment of this note. He asked me what I could do at present. I told him. I had $70 that I could pay at the time and he said 'Well, make the check out direct to the company' and he would mail it in and he was sure that I could pay the rest in the future; that it would be all right with the company; and we did that. . . . Mr. Mellor told me that he was sure that this would meet the approval of the

company and that my policy would be in force and valid. . . . And he said I could pay the balance as I could raise the money."

With respect to this transaction Mellor testified that plaintiff came to his office and discussed the letter which he had received, of which the witness had a copy, and said something about carrying the policy on an installment basis. Witness told him the rates were higher on that basis and if he could see his way clear he should send them what money he could and take care of the present note rather than to write a new contract. Plaintiff said he had some money— $70—that he would pay if witness thought that would be satisfactory, and witness had told him "we could try it."

"He wrote the first check to me. I asked him to change it. . . . I asked him to make the check direct to the National Fire Insurance Company because I didn't care to assume any liability; that if it wasn't satisfactory to them they would return this money to me with further instructions to him."

The witness did not recall what was said about when further payments would be made on the note.

Following this transaction, and on April 28, 1931, Mellor wrote defendant as follows:

"We are in receipt of a copy of your letter to Theo Roth of this address, dated April 11th, in connection with note No. 53486, Farm Policy No. 558637, and note what you say with reference to the collection of this particular item.

"Mr. Roth was in the office Saturday and said that he could pay $70 on the account if we figured same would be acceptable to you, and that it was impossible for him to pay the full amount of the note at this time. We were sure that this would be satisfactory with you, so had him make his check in this sum payable to you and are enclosing it herewith. Please credit same to the note and we are sure that in due course of time this account, with accrued interest, will be taken care of."

Defendant received plaintiff's check for $70, collected the same, and credited the amount upon his note, but made no acknowledgment of it either to plaintiff or to its agent Mellor, nor did defendant advise plaintiff that the arrangement its agent Mellor made with plaintiff was not satisfactory.

About May 1, 1932, defendant delivered plaintiff's note to The Associated Credits of America, in Chicago, with authority to collect the same. That agency wrote plaintiff three letters, dated May 2, May 17 and June 1, 1932, in an effort to collect the remainder of the note, stated to be $175.50. The first of these, among other things, stated: "From what your creditor has told us we know of no reason why you should not pay this obligation." In the sec-

ond, part payment, with a statement of when and how balance would be paid, was requested, and the third was an "advance final notice" that if the claim were not adjusted in ten days "we will proceed to collect the same, with all costs allowed by law."

On June 3, 1932, the barn described in the policy was struck by lightning, resulting in a fire loss of $1,650, and on June 21 a fire in the residence caused a loss of $150. Defendant was given notice of each fire within five days of the date thereof and denied liability and waived all right to demand a sworn proof of loss, or any further notice of loss.

After this action was brought, and on April 27, 1933, and before the trial of this cause on May 11, 1933, defendant tendered the premium note to plaintiff and his counsel "for and in surrender of the original policy," and stood ready to surrender the note to plaintiff when the policy was surrendered to defendant. This tender was not accepted by plaintiff.

We return now to the legal questions. Two are argued, which are stated thus: (1) Was there an express agreement between the parties, the effect of which was to waive the suspension clause? and (2) did the action and conduct of the defendant waive the suspension clause by implication of law? Both of these questions appear to have been answered in the affirmative by the trial court. Our problem is to determine whether there was evidence to sustain the holdings of the court.

As to the first of these it was stipulated that defendant's local agent at Whitewater, Kan., Harry Mellor, was only a solicitor for defendant, whose authority was definitely limited, and that he had no agency, power, or authority to bind the defendant by any agreement for insurance, or for extension of time in the payment of premium note, unless the exhibits or written instruments attached to the pleadings or introduced in evidence delegated to him such additional authority. The evidence disclosed that in writing the class of insurance here involved defendant had three basic rates, depending upon the time of payment of premium, one being based on the ordinary cash or six-months note plan of paying premium, another substantially higher on a credit basis for which an installment note was given payable over a period of four years in five equal installments, and an intermediate rate based on a premium note for a term of more than six, but less than twelve months. The policy issued to plaintiff was written on the cash or six-months note

plan. In defendant's letter to plaintiff of December 16, 1931, a suggestion was made of changing the policy so as to have the payments on a yearly basis, and plaintiff was told that the suggestion was made to defendant's agent Mellor, and plaintiff was asked to see him concerning it. In defendant's letter to plaintiff of April 11 the amount of plaintiff's note, with interest, was mentioned. It was stated that it provided for expenses of collection, which might make trouble and expense to plaintiff, advised of defendant's desire to maintain pleasant relations with plaintiff, and trusted remittance would be forwarded, and contained this sentence:

"If unable to remit full amount at this time see our agent or advise us promptly the best you can do and *we will give this our further consideration.*" (Italics ours.)

This was a clear invitation to plaintiff to make partial payments on the note in the event he could not pay it in full, and to see defendant's agent and advise what he could do, and embodied a specific promise on the part of defendant to give the matter further consideration. Defendant sent a copy of this letter to its agent and asked his coöperation in the matter. In response to this invitation plaintiff called on defendant's agent, Mellor, and said something about carrying the policy on the installment basis. He was informed that would be more expensive and that it would. be better for him, if he could see his way clear, to pay this note. Plaintiff said he could pay $70, and that he would pay the balance as soon as he could. Mellor did not pretend to know whether that would be satisfactory to the company, and told plaintiff that he could try that and if it were acceptable to the company that his policy would be in force. Plaintiff paid $70, making the check payable to defendant, at Mellor's request. Mellor told plaintiff that if this were not satisfactory he would hear from it, and remitted the check to defendant's Chicago office with his letter of April 28, 1931, in which he expressed the assurance that in due course of time the account, with accrued interest, would be taken care of. Plaintiff heard nothing further from the matter. He had every reason to believe that the arrangement he made with Mellor was satisfactory to defendant. He had been advised that defendant would "give this our further consideration." Naturally he assumed that had been done and that it was satisfactory for him to carry the policy on the basis originally written, so far as the premiums were concerned, and from Mellor's statement that the policy would be in force in view of that arrange-

ment. Appellant contends that Mellor had no authority to say to plaintiff that his policy would remain in force. He certainly had apparent authority to do so. (Restatement, Agency, § 8.) Whatever Mellor did in this connection he was acting for and on behalf of defendant. He was not the agent or representative of the plaintiff in any sense. Defendant had made him its representative to negotiate with plaintiff, and on being informed of the negotiation made no objection to it. But it is argued that Mellor's letter of April 28 did not advise defendant's Chicago office that Mellor had told plaintiff his policy would be in force. Certainly the wording of the letter does not exclude that view, but, on the other hand, is entirely consistent with it. If defendant's Chicago office deemed it ambiguous in that respect, assuming the report was given further consideration, as it was stated would be done, it could, by correspondence either with plaintiff or with Mellor, have cleared up any ambiguity in the meaning. At no time after that, and prior to the loss for which this action was brought, did defendant ever contend that its liability on the policy was suspended. No question having been raised by defendant as to this arrangement, plaintiff was entitled to believe that the arrangement he made with defendant's agent Mellor was satisfactory.

Appellant argues that if this agreement was made it was not binding on defendant for the reason that no time was fixed for the payment of the balance of the note, nor was there any consideration for extension of time. This is not an action on the note in which defendant here is pleading that the action was prematurely brought, or in which is raised the question of the statute of limitations, as was *Costello v. Wilhelm,* 13 Kan. 229; *Stone v. Barr,* 111 Kan. 775, 208 Pac. 624; *Heaton v. Myers,* 115 Kan. 75, 222 Pac. 66, and allied cases, cited and relied upon by appellant. More than that, defendant is hardly in position to repudiate an agreement to forbear made with plaintiff by its agent, specifically authorized to negotiate with plaintiff concerning the matter, subject to the approval of its Chicago office, which approval, under the circumstances, must be held to have been given.

A clause in the policy for the suspension of liability of the company while a note given for the premium is past due and unpaid is one which we do not find in the New York standard form adopted by statute, with some modifications, in more than twenty of the states. Its real purpose is to aid in the prompt payment of the

premium note by withholding liability temporarily (1 Cooley's Briefs on Insurance, 726 *et seq.*), and as such it is not against public policy, nor illegal (*Eikelberger v. Insurance Co.*, 105 Kan. 675, 189 Pac. 139), unless made so by statute (*Fidelity-Phenix Fire Ins. Co. v. School Dist. No. 62, Jackson Co.*, 70 Okla. 300, 174 Pac. 513). But we do not understand this doctrine would go so far as the literal wording of the provision and the argument of counsel would lead us. For example, if nothing had been paid on this note, and the term of the policy had expired, that it would enable defendant to sue on the note and collect the full amount due; or if all of the note had been paid except a small amount—say a dollar—that there would have been no liability on the policy after the due date of the note. But we need not determine the rights of the parties under such extreme situations, for they are not present here. We mention them only to indicate that situations might exist under which it could hardly be said that an interpretation of the rights of the parties based on the strict language of the clause would not be against public policy. One thing the authorities cited agree upon—that a provision of this kind in a policy is for the benefit of the insurer and may be waived by it under such circumstances as it deems proper. No reason suggests itself why defendant could not forbear or postpone the collection of this note, or why, in view of a substantial payment upon the note and the promise to pay the remainder later, it could not waive this clause and agree that the policy should be in force. We see nothing illegal or against public policy in such forbearance. Certainly Mellor had the apparent authority to negotiate with plaintiff, as the testimony discloses that he did. In view of what the record discloses it cannot be said that the trial court had no evidence to support the finding that defendant agreed to waive this clause.

Passing to the next question argued: Did the action and conduct of defendant waive this provision of the policy? In addition to the facts stated in discussing the first question argued the record shows that about May 1, 1932, defendant, through a collection agency at Chicago, demanded of plaintiff the full balance due on the note, with at least some interest added. It should be noted also that at no time after April 28, 1931, did defendant ever intimate to plaintiff that his policy was not in force until after the fire in June, 1932. While there is some authority to the contrary, the majority of the cases hold that the retention by the insurer of a past-due premium note as a subsisting obligation, and an unconditional demand for

its payment, are facts sufficient to support a finding that the insurer has waived its right to declare the policy suspended because of the nonpayment of the premium note at its maturity. The cases on this point are collected in the recent annotation 83 A. L. R. 846, 850 *et seq*. These cases are founded upon the view that the insurer is not entitled to the premium where it affords no protection to the insured. A few of the cases supporting this rule are as follows: *Washburn, Admr., v. Union Central Life Insurance Co.*, 143 Ala. 485, 38 So. 1011; *Adam v. Columbian Nat. Life Ins. Co.*, 218 Ill. App. 54, reviewing many earlier Kentucky cases; *Novak v. Lafayette Life Ins. Co.*, 106 Neb. 417, 184 N. W. 64; *Palmer v. Phœnix Mutual Life Ins. Co.*, 84 N. Y. 63; *Carroll v. New York Life Ins. Co.*, 46 N. D. 588, 180 N. W. 523; *Oklahoma Fire Ins. Co. v. Reddington*, 57 Okla. 210, 156 Pac. 1165; *Schumacher v. Life Insurance Co.*, 41 S. D. 178, 169 N. W. 526; *Jefferson Standard Life Ins. Co. v. Hicks*, 264 S. W. 1033 (Tex. Civ. App.).

To support this rule it is essential that the demand for payment be unconditional (*Exchange Trust Co. v. Capitol Life Ins. Co.*, 40 F. 2d 687; 49 F. 2d 133), and that is the situation here. In some of the cases, as *Fireman's Fund Insurance Co. v. Jackson*, 161 Ga. 559, 131 S. E. 359, taking a contrary view, the courts stress an additional clause in the policy to the effect that efforts to collect the note in full, by suit or otherwise, should not be construed as a waiver of the suspension clause; but we have no such provision here. In some of the cases the fact that demand for the payment was refused was given weight. See *Cook v. Lamar Life Ins. Co.*, 156 Miss. 16, 125 So. 409; *National Life Association v. Brown*, 103 Ga. 382, 29 S. E. 927; and in some of the cases, notably *Garlick v. The Mississippi Valley Ins. Co.*, 44 Ia. 553, relied upon by appellant, a directly contrary view is taken.

It would serve no useful purpose to make a critical analysis of the cases above cited, and many others bearing in some way upon the question. It is sufficient to say that the majority rule, as stated, conforms the better to our judgment. But the evidence in this case tending to support waiver by defendant does not rest alone upon the fact of the unconditional demands for the payment of the balance due upon the note, with interest, made in May and on June 1, 1932, but rests in part upon the arrangement made with plaintiff through its agent Mellor in April, 1931, and the fact that thereafter no contention was made by defendant, until after the loss, that its

liability on the policy was suspended. Upon the whole it cannot be said the trial court was without evidence upon which to base its judgment.

Finding no error in the record, the judgment of the trial court is affirmed.