## FIREMAN'S FUND INSURANCE COMPANY *v.* JACKSON.

Under the facts stated in the certified question, the conduct of the defendant company did not constitute a waiver of the provision of the policy as set forth in paragraphs (a) and (e).

No. 4756.    JANUARY 15, 1926.

The Court of Appeals (in Case No. 15990) certified the following question: "In a suit upon a fire-insurance policy the petition contained, among others, the following allegations: The defendant company, on August 22, 1922, issued to the plaintiff a policy covering certain property of hers, and when the policy was delivered the plaintiff paid the defendant company $51.07 in cash and executed and delivered her promissory note for the sum of $113.52 principal, as payment of the balance of the premium due on the policy, the note being divided into two equal installments of $56.76 each, due on September 1, 1923, and September 1, 1924. On March 1, 1924, the property insured was totally destroyed by fire, and at the time of the fire the plaintiff was in default of the installment due September 1, 1923, but the defendant company had

---

Fire Insurance 26 C. J. pp. 115, n. 49; 269, n. 93; 270, n. 95; 328, n. 70; 329, n. 78.

Pending 30 Cyc. p. 1364, n. 7.

While 40 Cyc. pp. 925, n. 47; 926, n. 50.

retained possession of the note, had declared the entire debt due, had placed the note in the hands of its attorneys for collection, was asserting its right to collect the same, and was attempting to collect not only the installment of $56.76 due September 1, 1923, but also the installment due September 1, 1924. Furthermore, no notice of cancellation of the policy was ever given the plaintiff by the defendant company, nor did it ever offer to return the note to her, nor did it make any request of her to return her policy to it prior to the fire. It was alleged that this conduct of the defendant company constituted a waiver of the following provisions, especially of paragraphs (a) and (e) of the policy:

(a) 'Payment of notes or installments for premium. It is understood and expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any installment of the installment note, given for premium upon this policy, remains past due and unpaid; or while any single payment, promissory note (acknowledged as cash or otherwise), given for the whole or any portion of the premium, remains past due and unpaid.'

(b) 'The company may collect, by suit or otherwise, any past-due notes or installments thereof, and a receipt from the said Atlanta office of the company for the payment of past-due notes or installments must be received by the assured before there can be a revival of the policy, such revival to begin from the time of said payment, and in no case to carry the insurance beyond the end of the original term of this policy.'

(c) 'In settlement of any loss under this policy, this company may deduct therefrom the entire amount of any unmatured note, given in whole or in part as a consideration of this policy, whether such note is payable in installments or otherwise.'

(d) 'This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the pro rata premium.'

(e) 'No officer, agent, or other representative of this company

shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.'

The petition did not contain an allegation of any written endorsement or agreement as to waivers being upon or attached to the policy. Under the above-stated facts, did the said conduct of the defendant company constitute a waiver of the provisions of the policy as set forth above in paragraphs (a) and (e) ?"

*Smith, Hammond & Smith* and *Whipple & McKenzie,* for plaintiff in error.

*Henderson & Davis* and *Watts Powell,* contra.

GILBERT, J. The clause of the insurance policy, designated as (a) is devoid of ambiguity. The act of the insurer, that is, the effort to collect unpaid portions of the premium represented by notes, was a matter subsequent to the issuance of the policy and does not fall within that class of cases where the acts were done previous to or simultaneously with the issuance of the policy and were held to be waivers. *Johnson* v. *Ætna Insurance Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92), and authorities cited. The contract of insurance provided: "It is understood and expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned *while any installment* of the installment note, given for premium upon this policy, remains past due and unpaid," etc. The word "while" used in this connection does not mean that on failure to pay the installment the policy became absolutely void. The word rather has the meaning of "pending" or "during the time" that is, that "pending the time" or "during" the time the installment note remains unpaid the policy was unenforceable, and when the installment note was paid the primary status was restored. Webster's New International Dictionary defines the word "while" as meaning "during the time that; as long as," etc. The same authority defines the word "pending" as follows: "During, hence during the pendency of, the com-

36

pletion of, or the like, as pending the action, decision, negotiations, settlement." This dictionary gives as synonyms the word "during" as "during the trial." "In modern usage, it more frequently has the sense of while awaiting (an occurrence), until the conclusion of (an action) ; as, pending his return, pending the decision, pending the negotiations." Therefore, it would appear that the clear meaning of the contract of insurance was that pending or during the time when the installment of the premium was due and unpaid the company would not be liable. In Kerr on Insurance, 301, § 132, the author says: "A provision in a premium note that if it is not paid at maturity the entire premium shall be considered earned, and the policy shall be null and void so long as the note remains overdue and unpaid, is valid and binding, and the policy is unenforceable if the note is not paid at maturity or prior to the loss." In 3 Joyce on Insurance, § 2510, it is said: "A condition in an insurance policy, that in case a premium note is not paid in full at maturity the policy shall be inoperative so long as it remains unpaid, is a valid condition, and is a good defense to an action on the policy for a loss occurring during the period of default." In the case of Jefferson Mutual Insurance Co. v. Murry, 74 Ark. 507, 510 (86 S. W. 813), it was said: "It is also stipulated, that, in case of default in the payment of the note at maturity, the full amount of the premium shall be considered as earned. According to this stipulation, the premium was earned by the risk assumed and borne by the insurer in the period or periods during which the policy was not suspended, and was in force. This being true, the acceptance of the payment of the note after the destruction of the property insured by fire in no way affected the rights of the appellant, as it was entitled to the payment in any event and in any aspect of the case. . . The property insured having been destroyed by fire while the policy was suspended, the parties stood as they would have if the fire had occurred after the expiration of the time first fixed for insurance. The insurance company was not liable, and no proof of loss was required or made necessary by the contract of parties." In the opinion in the case of Williams v. Albany City Insurance Co., 19 Mich. 451 (2 Am. R. 95), the writer said: "And, so far from seeing any reason to doubt the validity of the provision, I am unable to see anything unfair or unreasonable in it. It seems to me no more than fair and recip-

rocal, that, while the insured continues in his violation of the contract to pay, the insurer should not be bound by his, to sustain the risk, when the parties have so deliberately agreed, and when the insured has it in his power at any moment, by simply performing his own duty, to make the insurer resume the risk for the future; and when it must be presumed that the amount of premium was fixed with reference to these provisions." And see Wall *v.* Home Insurance Co., 36 N. Y. 157. The insurance policy sued on in this case contains the following provision: "The company may collect, by suit or otherwise, any past-due notes or installments thereof, and a receipt from the said Atlanta office of the company for the payment of past-due notes or installments must be received by the assured before there can be a revival of the policy, such revival to begin from the time of said payment, and in no case to carry the insurance beyond the end of the original term of this policy." That is, while the installment remained due and unpaid, the liability of the insurer was suspended. Under the facts stated in the question, therefore, we answer that the conduct of the company did not constitute a waiver of the provisions of the policy set forth in paragraphs (a) and (e).

*All the Justices concur, except Russell, C. J., dissenting.*