[File No. 6148.]

KOPALD ELECTRIC COMPANY, a Corporation, Respondent, v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited, a Corporation, Appellant.

(251 N. W. 852.)

Opinion filed December 15, 1933.

*G. S. Wooledge* and *B. H. Bradford,* for appellant.

*G. W. Twiford, E. R. Sinkler* and *G. O. Brekke,* for respondent.

BURR, Ch. J. Plaintiff brought action to recover upon an accident insurance policy alleged to have been issued by the defendant insuring the plaintiff against damages for injuries caused as a result of the ownership of a Pontiac automobile, which policy is claimed to have covered the period from the 4th day of June, 1929, at 9:00 A. M., to the 4th day of June, 1930, at 12:01 A. M. Plaintiff says that almost immediately after the contract for insurance was made the automobile described caused injury to one Mrs. Morstad; that defendant on demand failed, neglected, and refused to defend against the suit, though notified so to do; that plaintiff was compelled to expend the sum of $182 as reasonable costs in defending the suit; that judgment in the sum of $4,080.24 was entered in favor of said Mrs. Morstad against the plaintiff because of said collision, which judgment has become final, and defendant has failed to pay the same. Plaintiff therefore asks judgment for $4,816.24, and interest.

The defendant admits that there was a judgment entered in favor of Mrs. Morstad against the plaintiff "and that the cause of action upon which the said judgment was based arose by and through a collision of a car driven by the employees and agents of the plaintiff," and admits that it was notified to defend the action, failed to do so, and has refused to pay the judgment or any part thereof. The defendant denies that it ever issued any insurance policy as alleged by the plaintiff.

The case was tried to a jury. Both parties made a motion for directed verdict. The jury was dismissed and the court made findings of fact, conclusions of law and order for judgment in favor of the plaintiff. From the judgment entered pursuant thereto the defendant appeals.

Plaintiff's cause of action rests solely upon oral negotiations for a contract of insurance and appellant contends the evidence fails to show any oral contract of insurance was ever entered into between the plaintiff and defendant prior to the collision involved, and that the agent

of the defendant, with whom the plaintiff contends it made the contract, had neither actual nor ostensible authority to enter into any oral contract.

The defendant appointed A. M. Fruh, of Minot, its agent for Minot and vicinity, "for the purpose of procuring applications for insurance and bonds and for the other purposes hereinafter named, and for such purposes only." Fruh was required to transmit the applications and was entitled to commissions "only on such policies or bonds as are actually issued" and "on or before the 10th day of each month on blanks furnished by the company" to forward to the company "full detailed statement covering premiums collected . . . during the previous calendar months . . . and remit the same to the Company after deducting commissions." Nowhere in his contract of appointment is he authorized to issue automobile liability insurance policies or pass upon their acceptability; and by the acceptance of his contract he expressly agreed "to be bound by same, being governed in all respects by the Company's manuals, rulings and instructions and not otherwise."

There is nothing in the record showing how applications are to be taken, to whom they are addressed, whether they are to be signed by the applicant, or whether a policy, if issued, is to date from the time of the application.

The record shows that Hull Insurance Company, a corporation, was the general agent of the defendant in this state, and from the fact that the policy issued in this case, though issued by the company itself, was countersigned by Hull Insurance Agency, and also that the correspondence between the Minot agent and the company was carried on largely through Hull Insurance Agency, we assume the local agent transacted business through this agency whose headquarters were in Fargo.

The plaintiff negotiated through Maurice Kopald, and it seems that some time prior to June 4, 1929, Fruh asked Kopald if he wanted automobile accident insurance on a Pontiac car, and the latter said, "I didn't think I was going to insure it." Testimony for the plaintiff shows continuance of the solicitation and at some time in the forenoon of June 4th—shortly prior to nine o'clock—Fruh obtained the numbers of the Pontiac car involved. Kopald says he agreed then to insure and

Fruh told him "You are covered right now." He also told him "The policy would be issued at Fargo."

In this case no written application whatever was made by any one. The whole claim to insurance rests on the oral statements quoted.

The plaintiff asked the trial court "to take judicial notice of the files and records in the office of the Clerk of the District Court in the case of Molly Morstad against Kopald Electric Company," which was done. The files and records of this case show that some time between half-past eight and half-past nine in the forenoon of June 4, 1929, and at a point about one hundred miles east of Minot a collision took place between this car involved and the one in which Mrs. Morstad was riding. An employee of the plaintiff had possession of this car and remained in Rugby the preceding night—leaving there on a business trip east. The stipulation in this case is that the collision took place one half an hour after the alleged oral contract was consummated. It is conceded that the policy actually issued by the defendant company did not cover the period of June 4, 1929, but covered a period beginning June 5, 1929, 12 :01 A. M.

It is not necessary to set forth further testimony in the case. The two main issues of fact are: the extent of the authority of Fruh to bind the company, and whether in fact any contract for insurance was made prior to the accident involved.

The trial court found for the plaintiff on both of these main issues. We are not unmindful of the weight to be given to the findings of the trial court in such a case as this. This court has repeatedly held that "the findings, where a jury is waived, are presumed to be correct and will not be disturbed unless shown to be contrary to the preponderance of the evidence." Grewer v. Kinnischtzke, 61 N. D. 116, 237 N. W. 305. However, this does not mean that this court must accept all findings of the trial court, otherwise there would be no need for the rule cited.

The specifications of error allege that the court erred in overruling the defendant's motion for a directed verdict; that the court erred in ruling the plaintiff was entitled to judgment; and that the evidence is insufficient to justify the findings, the order for judgment, and the judgment entered for the plaintiff.

Both sides made motion for judgment upon the evidence introduced. The defendant was not entitled to judgment as a matter of right, for there is conflict in the testimony; but neither was the plaintiff. The court made findings and these are practically equivalent to the verdict of a jury. The specification of error to the effect that the evidence is insufficient to justify these findings is tantamount to a specification that the verdict of the jury is contrary to the weight of the evidence. If this appeal were based solely upon the failure of the court to grant a motion for a directed verdict, the judgment would need to be affirmed. As pointed out in State ex rel. Brazerol v. Yellow Cab Co. 62 N. D. 733, 739, 245 N. W. 382, 385, an appeal based on such specification alone does not involve "The weight of the evidence, (and) whether it could be remedied upon a new trial." In Taylor v. Minneapolis, St. P. & S. Ste. M. R. Co. 63 N. D. 332, 248 N. W. 268, 272, where the sole specification of error was the refusal of the court to direct a verdict for the defendant, we said:

"Were the question one of weight of the evidence, or the exercise of discretion on the part of the trial court in granting a new trial because of the unsatisfactory state of the evidence, it would be an entirely different matter."

But, in the present case, there is also the question of the insufficiency of the evidence to justify the findings. We have considered and weighed the evidence, particularly so because it appears so unsatisfactory to us that we find ourselves in opposition to the view of the trial court.

Before this alleged oral contract was made plaintiff knew Fruh was agent for the defendant company. He had received and seen the advertising matter and knew defendant was the company for whom Fruh was soliciting insurance. He knew Fruh would not issue a policy, but would send to Fargo for one. While § 4959 of the Compiled Laws says: "Whoever solicits insurance on behalf of any insurance corporation or person desiring insurance of any kind . . . or who makes any contract for insurance, or collects any premium for insurance, . . . shall be held to be an agent of such corporation to all intents and purposes, unless it can be shown that he receives no compensation for such services;" this merely fixes the relationship of the solicitor as to the company or the insured. It does not define the scope of his authority, nor can his act be charged to be the act of the insured. The

limited extent of the authority of Fruh was known to the plaintiff—partially at least.

The claim that Fruh had a wider range than the written agreement would indicate rests upon a more or less incidental statement contained in the letter, Exhibit 3, written by Hull Insurance Company.

After the accident some correspondence regarding the facts in the case took place between Fruh and this agency. The agency had written Exhibit 2, introduced by plaintiff, which stated:

"We received definite instructions from the New York office to issue this policy (the new policy) dated June 5th.

"This is done in view of the fact that there apparently was no liability on the part of this assured in connection with the claim occurring on the 4th of June, and as no other claim occurred the Corporation desires to leave it up to the assured to definitely settle this alleged claim and not have the insurance brought into it."

The company had declined to issue a policy covering June 4th. Again Fruh wrote the company and received Exhibit 3, which said:

"Ex. 3: We duly received your letter of the 18th inst. relative to the time insurance is in force on any applications for public liability and property damage coverage taken by you. Inasmuch as you are a licensed agent for the Ocean, it is assumed that at the time you take an application for insurance it is immediately in force. In the case of the Kopald Electric Company, however, on account of the accident which occurred it was the instructions from the New York office to date the policy after the accident. There apparently was no liability on the part of the Kopald Electric Company and for that reason the date of the policy does not make any material difference, but as stated before, ordinarily the insurance would be considered in effect just as soon as you take the order."

Defendant objected strenuously to the introduction of this letter on the ground that "it is incompetent, irrelevant, and immaterial, not referring to any matter involved in this action, a conclusion of the writer thereof, and not a statement of fact, no foundation laid, hearsay as to this defendant."

The objection should have been sustained. The letter was written on July 22, 1929, about seven weeks after the alleged oral contract. Plaintiff's whole case is predicated upon what he claims was a com-

pleted contract. Unless the contract was complete on the 4th of June as alleged by the plaintiff, then there was no contract. There was an offer. to buy insurance and unless Fruh had authority to accept the offer and make a contract, then this offer was not accepted by either Hull Insurance Company, the general agents, or by the company itself. The company made a counter offer of an insurance policy for a different date. It will be noted the alleged admission of authority of Fruh is not made by the company nor was it made to the plaintiff. It is made by an agent of the company. While admissions relating to the subject matter, made by the agent while he is making the contract, are generally binding on the principal, they must be made at the time and as a part of the transaction. They must be part of the res gestae. See Hartford Ins. Co. v. Sherman, 225 Ill. 329, 78 N. E. 923, 925; Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449, 15 A. 865; 2 Am. & Eng. Enc. Law, 2d ed. 142. R. M. Hull was present and testified. He should have been examined on this matter and then if necessary his letter could have been used to impeach him, but not as primary evidence. See rule as stated in 2 Am. & Eng. Enc. Law, 149; McAlpin v. Cassidy, 17 Tex. 449. Where the other party knows of the limited authority, statements made by the agent regarding matters outside of the authority known to be given would not be binding. But statements made by the general agent after the transaction is completed are not binding upon the principal. If the contract were made and completed, then so far as that transaction was concerned there was no need for further agency and admissions and statements by the agent would not be binding upon the principal. See Woolsey v. Haynes (C. C. A. 8th) 165 F. 391, 395.

To show the unsatisfactory character of the testimony, we refer to the record. Fruh wrote the general agents to the effect that he had solicited the insurance and also sent them a statement in writing giving the numbers of the car, its description, a statement of the ownership, together with the amount of insurance desired and time of coverage—being from June 4, 1929, at 9 o'clock (it does not say whether 9 A. M. or 9 P. M.) to June 4, 1930, at 12:01 A. M. Fruh says he had telephoned them about the matter and acquainted the company with the fact of an accident, had assured them there was no responsibility on the part of the plaintiff for the accident and that affidavits showed this

fact. The Hull Insurance Agency said that in view of the information they did "not believe this is a very serious matter and we do not believe the Kopald Company is responsible for the damages;" but that the New York office had given definite instructions that the policy to be issued would be dated June 5, 1929. Accordingly, a policy was issued and sent to Fruh which insured the car from June 5, 1929, to June 5, 1930. In the meantime the company sent a series of questions to Mr. Fruh, including this: "Please state to us the exact time of day and the exact date that this order was given to you." To which Mr. Fruh answered, "June 4, 1929. About 9:00 P. M." Mr. Fruh in his testimony explains that he made an error in saying it was 9 P. M. and he should have said 9 A. M. While declining to issue a policy covering June 4, 1929, the company tendered a policy for the year beginning June 5th.

It is the claim of the plaintiff that when the new policy was tendered it was immediately rejected and in this he is corroborated by Fruh; but an examination of the testimony in other portions of the record indicates he must have held it for about thirty days. Though Mr. Fruh says the new policy was not sent to him until the latter part of July or the first of August, and that it was delivered to Kopald when received and Kopald says he got it in July and returned it, Fruh's testimony also shows that the policy was kept by him for thirty days after it was returned and then delivered to plaintiff's attorney "after the suit was determined in the Morstad case," and this attorney testified he got the policy after this court decided the Morstad case. The remittitur was introduced in evidence and is dated in December, 1931. If so, plaintiff must have kept the policy until near the time this case was started. Also, on examination of the plaintiff's manager before trial, he admitted the policy was delivered to him and he made no claim at that time that he had returned it.

Plaintiff says he paid the premium demanded for a policy covering the period beginning June 4th, that the premium was retained by the company, and therefore it cannot now repudiate liability, and though it was paid for a period already past and after the accident, it was the custom for the company to issue policies covering a period already past and that they did so in the new policy tendered in July, for this covered a period beginning June 5th.

The premium was not paid until August, long after the second policy was issued. At that time plaintiff well knew the company had refused to issue a policy covering June 4th. It issued a policy covering June 5th and there is nothing whatever in the record showing that either the company or Hull Insurance Agency as general agents was ever notified that the premium paid in July was for any policy other than the one tendered by the company. There is nothing in the record showing any demand for the return of the premium or any notification to Fruh, to Hull Insurance Agency, or to the company itself that the premium was for a period covering June 4th.

While Fruh the local agent testifies that he billed the plaintiff for the premium he shows that this was after the rejection of the offer to take insurance covering June 4th, and at the time or after the tender of the policy actually issued. Nowhere does he claim that the bill sent the plaintiff was for the premium on the original offer.

The premium for this policy was $25.00, the same as the premium for the policy said to have been orally agreed upon. The company retained the premium. It had issued this policy covering the period from June 5, and there is no claim the policy was returned to the company or that it ever knew that the premium paid was intended for any other policy. The testimony of Fruh and Kopald is to the effect that though both knew the company refused to issue a policy for the year beginning June 4, but had issued a policy for the year beginning June 5, that this policy had been rejected, and knew the defendant knew the accident had taken place, nevertheless, the plaintiff two months after the accident paid the premium upon a policy which it claims had been agreed upon orally with the local agent. There is no claim that in any remittance the premium was stated to be for the oral agreement of insurance. The evidence in regard to the time the application for insurance was made—when viewed in the light of all of the circumstances in the case—is also very unsatisfactory. With due respect to the findings of the trial court, we feel the evidence is not sufficient to justify the findings that Fruh had authority to make a binding contract of insurance and that the alleged contract was made on the 4th of June, 1929, prior to the accident. When this court, on a review of the record, finds the evidence such as to impel it to arrive at a conclusion different from that of the trial court because it believes the find-

ings are clearly and unquestionably opposed to the preponderance of the evidence, the court will set aside the findings and the judgment based thereupon. This has been the rule in this jurisdiction from the very first. See Jasper v. Hazen, 4 N. D. 1, 5, 58 N. W. 454, 23 L.R.A. 58, where the rule is laid down that the findings of the trial court "will not be disturbed unless clearly and unquestionably opposed to the preponderance of the testimony." This certainly means that when the findings are found to be so opposed to the preponderance of the testimony the findings will be reversed.

The judgment is reversed and the case remanded for further proceedings in conformity with law, with costs to the defendant.

BURKE, CHRISTIANSON and NUESSLE, JJ., and HOLT, Dist. J., concur.

Mr. Justice MOELLRING, being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of the First Judicial District, sitting in his stead.