[File No. 6416.]

ALBERT MEYER, Respondent, v. THE NATIONAL FIRE IN-
SURANCE COMPANY OF HARTFORD, CONN., a Corpora-
tion, Appellant.

(269 N. W. 845.)

78

Opinion filed November 14, 1936.

*Nilles, Oehlert & Nilles,* for appellant.

*Jacobsen & Murray,* for respondent.

Burr, J.   On July 30, 1932, the defendant, through one Rausch, insured property of the plaintiff against fire, as follows: the dwelling house, furniture, and furnishings for $800.00 and the outbuildings for $260.00, taking a note for the premium due October 1, 1932.

The contract for insurance provided:

That if this note "be not paid at maturity, this policy shall be suspended, inoperative, and of no force or effect so long as such note, or any part thereof, remains overdue and unpaid, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy.   And in case of any loss of said property, either partial or total, while said note, or any part thereof, remains overdue and unpaid, this company shall not be liable for such loss, nor shall the payment of said note or the receiving or retention of the proceeds, or any part thereof, by this company, render it liable for any loss occurring while said note, or any part thereof, remains overdue and unpaid; nor shall such payment or retention be· construed to be a waiver of any condition in this policy or application."

That "no officer, agent or other representative of this Company shall have power to waive any provision or condition of this Policy except such as by the terms of this Policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto. ·.   .   ."

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation.   If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

The note states: "It is hereby agreed that the Company shall not be liable for any loss or damage that may occur to the property insured, while this note, or any part thereof, shall be overdue and unpaid."

In August, 1932, the defendant, observing the provisions of § 6518 of the Compiled Laws, notified the plaintiff that the policy would be suspended if the note was not paid when due, and informed him of his right to pay in full or terminate the insurance. The defendant made no election, but on or about November 12, through one S. R. Shannon, who had the note for collection, requested an extension of time of payment of the note until December 15, 1932, which request was received by the company at its home office about November 22. This request was granted, and on November 29, 1932, the defendant gave the plaintiff notice of suspension of policy if the note was not paid on or before December 15.

The note was not paid, and on October 3, 1933, the dwelling house and furniture were destroyed by fire. The plaintiff immediately gave the company notice of loss.

On October 10 the company wrote, "We have your report of probable $700.00 loss under the above policy resulting from a fire which occurred October 3rd, 1933, involving the dwelling and household furniture items." However, the company repudiated liability on the ground that the policy was not in force.

On October 11, 1933, the defendant sent the note to Rausch for collection. On October 16, 1933, the defendant paid Rausch and the money was received and retained by the defendant.

Upon the refusal of the defendant to recognize liability, this action was brought. Judgment was entered for the defendant. The plaintiff moved for judgment notwithstanding the verdict or for a new trial, basing his motion on the insufficiency of the evidence to justify the verdict and on errors of law alleged to have been made by the trial court.

The trial court granted the motion for a new trial on all grounds alleged, and from the order the defendant appeals.

In the memorandum opinion the trial court comments upon the failure to charge the jury as to the agency of S. R. Shannon, and this

opinion shows the court was concerned with its own failure so to instruct the jury.

The record shows that S. R. Shannon was a licensed agent of the defendant, and an official of the company testified that it was through its "special agent" Shannon the company received the request for the extension of the note until December 15, 1932. It is also admitted that Shannon was empowered to collect the note.

Plaintiff claims that in April, 1933, Shannon, having this note for collection, interviewed him demanding payment; but extended payment by agreeing the plaintiff was to pay the note to Rausch "late in the fall" of 1933. Such testimony is not contradicted.

It is the contention of the plaintiff that because of this agreement the time of payment was extended and the defendant did not thereafter give the notice required by § 6518 of the Compiled Laws.

This section provides that:

"No such policy of insurance shall by virtue of any condition or provision thereof be forfeited, suspended or impaired for nonpayment of any note or obligation taken for the premium, or any part thereof, unless the insurer shall, not less than thirty days prior to the maturity of such premium, note or obligation, mail, postage prepaid, to the assured at his usual postoffice a notice, stating:

"1. The date when such note or obligation will become due.

"2. The amount of principal and interest that will then be due.

"3. The effect upon the policy of nonpayment.

"4. Such notice shall further inform the assured of his right at his own election either to pay in full and keep the policy in full force, or to terminate the insurance by surrendering the policy and paying such part of the whole premium as it shall have earned and must further state the amount which the assured is lawfully required to pay, or which on account of previous payment may be due him in case of his election to terminate the insurance on the day of the maturity of the premium, note or obligation."

Section 4959 of the Compiled Laws says: "Whoever . . . collects any premium for insurance, or in any manner aids or assists in doing . . . or in transacting any business of like nature for any insurance corporation . . . shall be held to be an agent of such corporation to all intents and purposes. . . ."

The trial court, in charging the jury, failed to read this section or give the import thereof, and because of such failure the court was of the opinion the jury might have arrived at its verdict on the theory that S. R. Shannon was not an agent of the defendant.

This section specifies what constitutes an agent; but does not purport to define the extent of his powers. Kopald Electric Co. v. Ocean Acci. & G. Corp. 64 N. D. 213, 251 N. W. 852. The agent has only such authority as the principal actually or ostensibly confers upon him. Comp. Laws, § 6336. The burden of showing the extent of this authority is upon the one asserting it. Corey v. Hunter, 10 N. D. 5, 12, 84 N. W. 570.

The plaintiff asserts that Shannon had ostensible power to extend the time of payment. Where a third party believes in the existence of such authority, and the belief rests upon some act of the principal sought to be bound, and there has been such conduct on the part of the principal reasonably resulting in this belief, the principal is estopped to deny this ostensible authority. Bernard v. Madsen, 52 N. D. 822, 204 N. W. 196; First Nat. Bank v. Henry, 30 N. D. 324, 152 N. W. 668. In that case the principal is bound even though he may be ignorant as to its exercise, for the authority is as broad as the principal has permitted it to be, or made it appear to be. Grant. County State Bank v. Northwestern Land Co. 28 N. D. 479, 498, 499, 150 N. W. 736.

But mere authority to collect a debt is not in itself indicative of the right to grant an extension. National Loan & Invest. Co. v. Bleasdale, 140 Iowa, 695, 119 N. W. 77; Angus v. Chicago Trust & Sav. Bank, 68 Ill. App. 425, affirmed in 170 Ill. 298, 48 N. E. 946; Padfield v. Green, 85 Ill. 529; Lincoln v. Finkelstein, 255 Mass. 486, 152 N. E. 332, 334; and Powell v. Henry, 96 Ala. 412, 11 So. 311, 314; 2 C. J. 626. The extent of the power of an agent entrusted with the collection of a note is discussed in National Bank v. Johnson, 6 N. D. 180, 69 N. W. 49; and in First Nat. Bank v. Prior, 10 N. D. 146, 86 N. W. 362.

But the constant practice of allowing agents to grant indulgences on premium notes and thereafter ratifying their acts is a waiver of a provision that failure to pay such note when due forfeits the policy, and such constant practice may be shown in support of the contention

that an agent granted an extension of time of payment. See Knicker-bocker L. Ins. Co. v. Norton, 96 U. S. 234, 239, 24 L. ed. 689.

Thus, if ostensible authority is shown or can be shown, then the debtor is entitled to rely upon such ostensible authority.

The plaintiff says the defendant failed to give the notice required by § 6518 thirty days prior to the new extension granted in 1932, and therefore the provision for the suspension of the insurance was not in force, even though the extension by Shannon be held insufficient.

The note was due October 1, 1932. More than thirty days prior thereto the company gave the notice prescribed by § 6518. The effect of this was to suspend the insurance. On November 22, 1932, the defendant received the request of the plaintiff to extend the time of the payment of the note until December 15, 1932. The plaintiff fixed this date himself and by his very request prevented the defendant from giving the required notice thirty days prior thereto. This statute is for the benefit of the insured. The extension of time to a date fixed by himself was a courtesy to him. By his own act he prevented the defendant from giving the thirty days' notice, and he can not now take advantage of this failure. He has waived his right under this statute.

The defendant alleges no proof of loss was furnished. From the very first notice of loss the defendant denied liability because of the claim that the policy was not in force. Consequently, furnishing proofs would be unavailing. On denial of liability the insured is not permitted on the trial to interpose the defense that formal proof of loss was not given. See Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 20, 156 N. W. 234; Schwindermann v. Great East-ern Casualty Co. 38 N. D. 584, 165 N. W. 982; Horswill v. North Dakota Mut. F. Ins. Co. 45 N. D. 600, 178 N. W. 798.

The defendant says it may collect the premium note and yet avoid any liability for loss occurring during the period of suspension. The contract does not state that the whole premium is considered earned in case of default in the payment of the note, and ordinarily the reten-tion and collection of a premium after knowledge of loss is a waiver of the provision against liability, unless there is an agreement that default in payment results in the premium being earned. See Joliffe v. Madison Mut. Ins. Co. 39 Wis. 111, 20 Am. Rep. 35. But an

agreement that the premium is considered earned upon default is not a waiver of the suspension. See Burner v. German-American Ins. Co. 103 Ky. 370, 45 S. W. 109; German Ins. Co. v. Emporia Mut. Loan & Sav. Asso. 9 Kan. App. 803, 59 P. 1092.

We do not consider the case of Fireman's Fund Ins. Co. v. Jackson, 161 Ga. 559, 131 S. E. 359, cited by appellant, sufficient authority for the contention that the acceptance of the premium after loss is not generally a waiver of suspension, in the absence of an agreement to that effect. The case cited is based upon decisions which, when examined, show the policy involved contained an express agreement that in case of default the premium should be considered earned, and the Georgia decision itself quotes from Kerr on Insurance as to the effect of a similar provision.

In the case at bar there is a specific agreement between the parties that the retention of the proceeds of the note shall not "be construed to be a waiver of any condition in this policy. . . ." If the parties may contract and consider the entire premium earned without waiving the benefit of suspension, we see no reason why they cannot contract in advance that retention of the premium shall not be considered to be a waiver of a right to insist upon suspension.

The rule of liability on the part of the company because of acceptance and retention of the entire premium after notice of loss is based on the theory that the company has waived its right to insist on nonliability; but in this contract of insurance there is an express agreement that such acts, which ordinarily would constitute waiver, shall not be considered to be waiver.

"Waiver" is a term difficult to define. As said in Townsend v. Barlow, 101 Conn. 86, 124 A. 832, 833, it has no definite and rigid meaning in the law but may and does take on a very definite meaning from its context. A waiver is the intentional relinquishment of a known right. Hoxie v. Home Ins. Co. 32 Conn. 21, 85 Am. Dec. 240. The term connotes "a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed." Ample authority for this statement is found in the citations in 67 C. J. 289.

As a rule waiver has reference to some one or more conditions, and

this policy, like almost every other policy, contains many conditions. It may be a waiver as to one condition and not to another. For example, in Hanover F. Ins. Co.. v. Wood, 209 Ala. 380, 96 So. 250, it is shown, "The mere retention of the unearned portion of a premium after forfeiture, though done with knowledge of the forfeiture (the particular forfeiture involved in that case), does not amount to a waiver as a matter, of law" though it may amount to a waiver of forfeiture for another reason, to-wit: the nonpayment of the premium. In Norris v. Hartford F. Ins. Co. 55 S. C. 450, 33 S. E. 566, 74 Am. St. Rep. 765, a policy provided that the premium should be repaid when the policy was returned for cancellation and it was held that failure to return the unearned premium did not estop the company from setting up forfeiture. In other words, it is not the violation of every condition that is waived by the acceptance of premium after a violation.

2 Williston on Contracts, § 765, contains this statement: "It is also often provided in the original policies of insurance that the requirements of the insurer in the way of proof, examination and appraisal, shall not constitute a waiver. There is no possible reason in the law of contracts why full effect should not be given to such a provision and generally this has been so held." If the parties may contract that such matters shall not constitute a waiver there is no reason in principle why the parties may not contract that acceptance and retention of premium shall not constitute a waiver of suspension because of nonpayment, where part of the premium has been earned and where a revived policy still covers part of the originally designated property. The principle enunciated by Williston seems to have support in some of the cases cited, such as Queen Ins. Co. v. Young, 86 Ala. 424, 5 So. 116, 11 Am. St. Rep. 51; Holbrook v. Saloise F. Ins. Co. 117 Cal. 561, 49 P. 555; Briggs v. Fireman's Fund Ins. Co. 65 Mich. 52, 31 N. W. 616; Johnson v. American Ins. Co. 41 Minn. 396, 43 N. W. 59; Oshkosh Match Works v. Manchester F. Assur. Co. 92 Wis. 510, 66 N. W. 525. As Williston points out in the same section, "when the parties have expressly agreed . . . that certain acts otherwise ambiguous shall not be taken to have a certain meaning, that meaning should not be attributed to them." Also, "Where a party may choose one of two alternative benefits, he cannot take both even

though he asserts that he intends to do so, and that his claim of one right shall not bar him from asserting the other. But even in such a case if the other party to the contract expressly agreed that the assertion of one right should not exclude the other, this agreement should be enforced."

The rule is well set forth in Northwestern Mut. L. Ins. Co. v. Amerman, 119 Ill. 329, 10 N. E. 225, 59 Am. Rep. 799.

To constitute a waiver by the insurer of a provision there must be some affirmative act on its part, such as to induce insured to rest on a well-founded belief that strict performance of the condition claimed to be waived will not be insisted upon, and mere neglect to insist upon a forfeiture is of itself insufficient. Rundell & Hough v. Anchor F. Ins. Co. 128 Iowa, 575, 105 N. W. 112, 25 L.R.A.(N.S.) 20.

In the case at bar the company had earned part of the premium at least. The insured had contracted that payment of the remainder should not be considered a waiver of suspension; immediately upon receiving notice of loss the company repudiated liability because of the suspension. The loss was but partial, and standing upon the agreement that the note could still be paid and was due it demanded payment and the insured paid. The policy, therefore, was reinstated and the company incurred liability for the property not destroyed. "Where all the property covered by a policy of a mutual fire insurance company is not destroyed, the receipt of a subsequent assessment by the company from a member who has sustained a loss while his policy was suspended for default in the payment of assessments will not operate as a waiver of such default." Farmers' Mut. Ins. Co. v. Kinney, 64 Neb. 808, 90 N. W. 926.

In J. P. Lamb & Co. v. Merchants' Nat. Mut. F. Ins. Co. 18 N. D. 253, 265, 119 N. W. 1048, we cited with approval the principle as to waiver laid down in this case, and this Nebraska case was reaffirmed in Johnston v. Phelps County Farmers' Mut. Ins. Co. 63 Neb. 21, 88 N. W. 142, 56 L.R.A. 127, and 66 Neb. 590, 92 N. W. 576.

See also Beeman v. Farmers' Pioneer Mut. Ins. Asso. 104 Iowa, 83, 73 N. W. 597, 65 Am. St. Rep. 424, where it is shown that because the policy was still in force as to the remainder of the property, being merely suspended, "the member had a right to revive it by paying his delinquent assessments."

A policy of insurance, such as the one under consideration, "stated in the aggregate, but further expressed in a specific amount on each of several designated portions of the insured property, (like the policy in question) is not an entire and indivisible contract, but as to each division of the property it is entire, though there may be included in a division several articles." Jensen v. Lincoln Hail Ins. Co. 125 Neb. 87, 249 N. W. 94.

While the policy was suspended there was no policy in effect. The insured had the option of reviving the policy if he saw fit, and as he had property which would be covered by the policy, he could determine for himself whether he wanted the insurance effective on that property. In other words, according to his contract, he agreed that when the suspension would be removed by his own act the policy would cover whatever property was in existence. As pointed out in McCullough v. Home Ins. Co. 118 Tenn. 263, 100 S. W. 104, 12 Ann. Cas. 626, "The stipulation for a suspension of liability under a policy in case of default in payment of the premium is a reasonable one, made to enforce prompt payment of that part of the premium for which credit is given. It violates no principle of public policy or rule of the common or statute law, and is valid. Such a stipulation only becomes effective and injurious to the insured upon their own default in a matter of which they have full notice and about which they cannot be mistaken." See also Hart v. Farmers' Mut. F. & Lightning Ins. Asso. 208 Iowa, 1020, 226 N. W. 777.

In this case the plaintiff is the one who would be entitled to benefit of the waiver attached to the action of the company in the collection and retention of the premium. If the collection and retention of the premium is a waiver of the company's right to claim the liability was suspended, it was a waiver for the benefit of plaintiff. The plaintiff is the one who can insist upon it. It is a right to which he would be entitled. But he may waive this right, and if he does, he cannot thereafter claim anything thereunder, for if waived his right is gone forever and cannot be recalled. See Marquette County Sav. Bank v. Koivisto, 162 Mich. 554, 127 N. W. 680, 682; Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co. 177 N. C. 103, 97 S. E. 718, 720; Smiley v. Barker (C. C. A. 8th) 83 F. 684, 687; Marine Iron Works v. Wiess (C. C. A. 5th) 148 F. 145, 153; Jones v. Maria, 48 Cal.

App. 171, 191 P. 943, 944; Templer v. Muncie Lodge, I. O. O. F. 50 Ind. App. 324, 97 N. E. 546; Libby v. Haley, 91 Me. 331, 39 A. 1004.

In Ohio Valley Buggy Co. v. Anderson Forging Co. 168 Ind. 593, 81 N. E. 574, 578, 11 Ann. Cas. 1045, the court quotes with approval from Bishop on Contracts, § 792: " 'Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistently with the existence of the right, or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.' "

From the very nature of the doctrine of waiver, "it may and seems generally to be applied to all rights to which the party is legally entitled." State ex rel. Birchmore v. State Canvassers, 78 S. C. 461, 59 S. E. 145, 148, 14 L.R.A.(N.S.) 850, 13 Ann. Cas. 1133. Of course, where public policy is involved such rule does not become operative; but it is not claimed the waiver involved here is against public policy.

Section 7247 of the Compiled Laws says, "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." If one may waive the benefit of a law intended solely for his benefit, there is no reason why he may not waive a purely personal benefit arising from the acts of the other party to the contract.

It is not necessary that such acts of the party have already occurred for in many cases an agreement for waiver may be for things in the future.

If, as stated in the Tennessee case cited, "a stipulation for a suspension of liability . . . violates no principle of public policy," then in this case it exists solely for the benefit of the insured and he may contract as to the effect of his own acts after suspension.

The plaintiff herein, therefore, did by contract specifically waive any right to which he was entitled ordinarily from the collection and retention of the premium money after notice of loss. This contract on his part is binding on him, and by his payment he was doing only what he bound himself to do.

But if the agent Shannon had ostensible authority to extend the time of the payment of this premium note and did extend it to a time

subsequent to the loss, then the plaintiff was not in default at the time of the loss. Such extension would be binding upon the company, even though it did not know of the extension so as to give the notice required by § 6518 of the Compiled Laws, already quoted. It must be conceded that such required notice was not given after this alleged extension by Shannon, and unless given, the liability of the company was not suspended at the time of the fire.

The contract is silent regarding extension of the note, how such extension is evidenced, or who is authorized to grant it. Testimony furnished by the defendant shows that at least one extension was granted through the agency of Shannon. Whether the plaintiff applied to Shannon for the extension believing Shannon had power to extend, or whether he asked Shannon to get the extension for him does not appear; but there is plenty of evidence to show that in general Shannon had charge of the collections for the company, checked over local agents, furnished local agents with stationery and blanks, and otherwise acted as an agent with extensive authority would act. The memorandum opinion shows the trial court recognized that he should have charged that Shannon was an agent and then left the extent of the agency to be determined by the jury. The court charged the jury that the plaintiff claimed Shannon was an agent, but at the same time left it to the jury to determine whether he was in fact an agent. The charge sets forth various sections of the statute defining an agent, and this was given to the jury to aid them in determining whether Shannon was in fact an agent. The statutes with reference to ostensible agency were not read, and while there was some reference to ostensible authority, there was no definite charge thereon. In view of the nature of the case, the trial court determined that he was in error in not charging definitely on the agency of Shannon and says in his memorandum opinion, with reference to the jury, that because of his failure so to do, "It may be that the jury under such instructions found that the relation did not exist. I believe that they should have been instructed that such relation existed as a matter of law. . . ." The motion for a new trial was based in part upon failure of the court "to instruct the jury on the theory of extension of the time of payment of the note." While this is somewhat vague, yet it is clear the trial court considered it as including the question of agency, and failing to in-

92

struct properly, the court felt there was such miscarriage of justice as required a new trial. This readily appears when we consider that the rights of either party are determined on a narrow issue of fact— the alleged ostensible authority of Shannon. Judging from the record, if Shannon did not have that authority, defendant is entitled to a verdict. If Shannon did have that authority, then, as no notice was given as required by § 6518 of the Compiled Laws, the plaintiff is entitled to a verdict. What a new trial may show may alter this situation. The order appealed from is affirmed.

BURKE, Ch. J., and CHRISTIANSON, MORRIS AND NUESSLE, JJ., concur.