[File No. 6545.]

ALBERT MEYER, Respondent, v. THE NATIONAL FIRE IN-
SURANCE COMPANY OF HARTFORD, CONNECTICUT,
a Corporation, Appellant.

(287 N. W. 813.)

Opinion filed August 28, 1939.   Rehearing denied October 23, 1939.

*Nilles, Oehlert & Nilles,* for appellant.

*Jacobsen & Murray,* for respondent.

N<small>UESSLE</small>, Ch. J. This is an appeal from a judgment of the district court of Grant county in an action brought to recover on a fire insurance policy.

This is the second time the case has been in this court. · On the first trial the defendant had a verdict. A new trial was ordered and the defendant appealed. The order was affirmed. See Meyer v. National F. Ins. Co. 67 N. D. 77, 269 N. W. 845. Thereafter a new trial was had. At the close of the case the defendant moved for a directed verdict on the ground of insufficiency of the evidence. The motion was denied pursuant to the mandate of the statute, § 7643, 1925 Supplement to the 1913 Compiled Laws. The case was submitted to the jury

who found for the plaintiff. Judgment was entered accordingly. Thereupon the defendant perfected the instant appeal.

The facts briefly stated are as follows: The plaintiff is a farmer. The defendant is engaged in the business of writing fire insurance on town and farm property. In July, 1932, the defendant insured the plaintiff's farm buildings. The application for this insurance was taken by one Rausch, the defendant's local agent at Raleigh, North Dakota. The plaintiff gave a note for the premium. The note was due October 1, 1932. The contract of insurance provided that if the note "be not paid at maturity, this policy shall be suspended, inoperative, and of no force or effect so long as such note, or any part thereof, remains overdue and unpaid, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy. And in case of any loss of said property, either partial or total, while said note, or any part thereof, remains overdue and unpaid, this company shall not be liable for such loss, nor shall the payment of said note or the receiving or retention of the proceeds, or any part thereof, by this company, render it liable for any loss occurring while said note, or any part thereof, remains overdue and unpaid; nor shall such payment or retention be construed to be a waiver of any condition in this policy or application. Payments of notes must be made to this company at its office in Chicago, Illinois, or to an authorized person having such note in possession for collection, and a receipt from the general office of this company in Chicago must be received by the insured before there can be a revival of the policy, such revival to begin from the time of said payment only and in no event to extend this policy beyond the original date of expiration." The note itself stipulated, "And it is hereby agreed that the company shall not be liable for any loss or damage that may occur to the property insured while this note, or any part thereof, shall be overdue and unpaid."

In August, 1932, the defendant, pursuant to the provisions of § 6518, Comp. Laws 1913, wrote the plaintiff advising him that the premium note was due and payable on October 1, and stating the amount thereof, together with interest.. The plaintiff was requested to pay the note when due and defendant inclosed a return envelop wherein to remit such payment. The notice further advised the plaintiff as to the condition in the policy that there would be no liability for loss

or damage under it while the note or any part of it was past due and unpaid and urged upon the plaintiff the importance of making payment on or before the due date, and that if plaintiff failed to pay the note within thirty days the policy would be suspended, inoperative, and of no force or effect so long thereafter as the note or any part thereof remained overdue and unpaid and the same would be so entered upon the books of the company, but would be reinstated upon receipt of the amount due at the defendant's office in Chicago. The plaintiff was further advised of his right to elect either to terminate the policy or to keep it in force on payment of the premium note. There was also a postscript to this notice as follows: "Special Notice. You are further notified that no agent or other person has any authority to collect or receive payment on such note unless he has the note in his possession at the time and any payment made by you to such agent will not be recognized by the company. You are also notified that no agent or person whether he has such note for collection or not, has any power or authority to extend the time of payment, or in any manner vary its terms or conditions." The plaintiff was also advised that a copy of the notice had been sent to Rausch, the defendant's agent at Raleigh.

The plaintiff did not pay the note or take any steps with respect to the matter until November 12. At that time he applied for an extension of the time of payment until December 15, 1932. To whom he made this application for an extension does not appear, but it was forwarded to the defendant's home office by one Shannon, an agent of the defendant, and was received there on November 22. The request was granted and the plaintiff was so informd by letter from the company. He was sent a printed slip stating that the extension had been made and directed to attach this to his policy. On November 29, the defendant again gave the plaintiff notice of the suspension of the policy if the note were not paid on or before December 15 by a letter, identical in form with that sent to him in August. These letters were sent to the plaintiff by registered mail and he admits having received them. The note was not paid, so in February, 1933, the defendant again wrote the plaintiff asking for payment, again stating that while it remained unpaid the policy was suspended. The plaintiff, however, did not pay and on April 14, 1933, another letter was sent asking for payment and reminding the plaintiff that the policy was in suspension. The defend-

ant concluded this letter by saying: "If the matter is not given attention in a week or ten days we will be forced to assume it is not your intention to do your part and will take such action as is in our judgment necessary, which usually means the note will be sent to an attorney." But no payment was made and nothing was done by the plaintiff. Thereafter and about the latter part of April, defendant's agent Shannon called upon the plaintiff and asked that the note be paid. There is but little disagreement as to what was said between the plaintiff and Shannon at this time. The plaintiff's testimony is that when Shannon asked for payment of the note plaintiff said he could pay it but that money was scarce and he could use it otherwise; that thereupon Shannon said, "That's all right, you can pay it this fall." Shannon's testimony is that when he called upon the plaintiff, plaintiff said he did not have the money but expected to get some within the next few weeks and would then pay the note; that thereupon Shannon said, "We will have to wait then, that's all right." Plaintiff's further testimony with respect to this conversation is that Shannon said the note would be sent to one Rausch, the defendant's local agent, for collection in the fall, and that plaintiff could pay it at that time. This, however, was denied by Shannon. In any event, no payment was made. On October 3, the plaintiff's dwelling house and contents were destroyed by fire. On October 10, defendant was notified of the loss and it at once wrote saying that the policy was in suspension on account of the nonpayment of the note and therefore the loss would not be paid. On October 11, defendant sent the note forward to Rausch for collection and on October 16 the plaintiff paid the note to Rausch.

When the case was sent back for a new trial the only questions for determination were, First, as to whether Shannon was an agent of the defendant at the time he interviewed the plaintiff in 1933, and, if he was, whether he had express or implied authority to grant an extension of the time of payment of the note so as to reinstate the policy; Second, if he did not have express or implied authority to grant such extension, whether he had ostensible authority to do so; and Third, if he had authority either actual or ostensible, whether he so acted with respect to the matter as to effect an extension of the note.

While it appears from the record that Shannon was a special agent of the defendant, it is clear that he had no authority, either express or

implied, to grant the extension which the plaintiff claims was given to him by Shannon.

We are further of the opinion that the record does not sustain the plaintiff's contention that there was ostensible authority in Shannon to grant the extension. "An agency is ostensible when the principal intentionally or by want of ordinary case causes a third person to believe another to be his agent, who is not really employed by him." Comp. Laws 1913, § 6324. Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent possesses. Comp. Laws 1913, § 6338. Tested by this rule there is nothing in the record which would warrant us in saying that there was an ostensible agency as claimed by the plaintiff. Shannon was never held out by the defendant as its agent with authority to grant extensions. No instance is shown in the record where he had ever done so, and certainly none whereof the plaintiff knew. On the contrary, in addition to the express provisions in the policy itself the notices of default sent by the defendant to the plaintiff contained the statement that no agent or person, whether he had the note for collection or not, possessed any power or authority to extend the time of its payment or in any manner vary its terms or conditions. Defendant's last letter to the plaintiff concluded with the intimation that if the note were not paid within ten days defendant would put it into the hands of an attorney for collection. Shortly thereafter Shannon called upon the plaintiff. He then told the plaintiff he had the note for collection and would like to have it paid. Plaintiff did not know Shannon. Shannon had to introduce himself. Other than stating he had the note for collection he made no representations as to the extent of his authority in the matter. Plaintiff could not have been misled because of the extension of the note in November for he had no knowledge that Shannon had forwarded his request for an extension to the defendant company. All he knew was that after applying therefor he had received notice of the granting of the extension directly from the company itself, which came to him from the Chicago office. Taking plaintiff's version of the conversation that was had between Shannon and himself, the most that Shannon said was—after plaintiff said he could use the money for other purposes—that it would be all right to wait until fall for the payment of the note

which then would be sent to Rausch for collection. Not a word was said about the policy or about reinstating it. Plaintiff had no reason to believe that Shannon meant to extend the time of payment of the note and thus reinstate the policy. The most that he could believe from the talk had, was that the defendant would forbear. Shannon did no more than a collector ordinarily does when he goes out with a note to collect and the debtor says he cannot pay and would like further time. He merely refrained from pressing for immediate payment. Ostensible authority to extend the note and reinstate the policy contrary to the provisions of the policy and to the plain wording of the notices which the plaintiff had theretofore received from the defendant, cannot be predicated upon such a showing as this. Mere authority to collect a debt is not, in itself, indicative of the right to grant an extension of the time of payment thereof. Meyer v. National F. Ins. Co. 67 N. D. 77, 269 N. W. 845, supra.

We need not inquire as to what, if anything, Shannon may have done in other cases because Meyer had no notice or knowledge of any other cases. All the plaintiff had to go upon was what was said and done at the time Shannon came to see him.

What we have said above disposes of this appeal. Since there was no authority either actual or ostensible established in Shannon to extend the note and reinstate the policy the plaintiff cannot recover. The burden was upon him to establish these essential matters, and he has failed to do so.

The judgment must be reversed and judgment ordered for the defendant.

BURKE, MORRIS, CHRISTIANSON, and BURR, JJ., concur.

NUESSLE, Ch. J. (on petition for rehearing). Counsel for the plaintiff and respondent has filed a somewhat impertinent petition for a rehearing. In challenging the correctness of the opinion heretofore filed he states, among other things, that "no legal brain embodying an honest attitude and reasoning along logical lines can come to any other conclusion" than that for which he contends. However we will overlook this now and consider such merit as the petition has, for a litigant

ought not to suffer prejudice because his counsel permits his zeal to befog his sense of fitness and propriety.

In his petition, counsel avers that the court in the opinion heretofore handed down, confused ostensible authority with implied authority. Confusion there may have been, but not on the part of the court. The argument of counsel heretofore both oral and in his brief was that there was both an actual express and an ostensible authority to grant extensions. Counsel's principal argument was predicated on the theory of ostensible agency, and we thought it so evident from the record that there was no actual authority in Shannon to reinstate the policy that we needed to give but little consideration to that branch of the case. We are still of that opinion. However, in view of the petition we will now give it somewhat more extended attention.

It is beyond question that there was no express authority in Shannon, and it is just as evident that there are no grounds for implying such an authority in him as counsel argues there was. It is contended that in the course of his employment prior to the transaction with Meyer, Shannon had many times granted extensions and thereby his authority to do so was manifested. The record, however, fails to establish any such action on his part. Instead, it speaks to the contrary.

The defendant insurance company wrote both farm insurance and town insurance. Its agents were authorized to write the town policies themselves. They were not required to remit the premiums immediately but were allowed ninety days' time within which to do so. Sometimes when their policyholders failed to pay within the time required arrangements were made whereby such payments could be deferred or made in instalments, but these things were not permitted with respect to farm insurance such as the plaintiff procured. In such cases the agents had no authority to issue policies and did not issue them. While they spoke of writing farm business, in fact they took applications for farm policies and submitted them to the home office of the defendant in Chicago and either remitted the premiums in cash or submitted notes therefor with the application or procured the payment of the premium in cash or by note when the policy was delivered. There is nothing in the record that indicates any other course of business at any time. Sometimes, and during the hard years frequently, the notes were not paid when due. In those cases the local agents, or

Shannon when he came to help in making collections, would interview the policyholder who was in default and if he was unable to pay the whole amount of his premium note might have him pay the earned portion thereof if he could, take up his policy, and submit a new application for a full three-year period. Such application was required to be and was submitted to the company at its home office and if approved a new policy was issued at that office and the new note for the full amount of the premium was accepted. Manifestly, it was this practice to which the plaintiff's witness Tollefson referred when he testified, because he says "the farm policy was written by application, while the town business the policies were written at the agency." And this practice was wholly consistent with the provisions of the policy contract quoted in the original opinion. There, after making provision with respect to the effect of failure to pay premium notes when due, it is said "payments of notes must be made to this company at its office in Chicago, Illinois, or to an authorized person having such note in possession for collection, and a receipt thereof from the general office of this company must be received by the insured before there can be a revival of the policy, such revival to begin from the time of such payment only and in no event to extend this policy beyond the original date of expiration."

But as we said in the opinion heretofore filed, even if Shannon had authority to arrange to extend the Meyer note, we do not think, taking the plaintiff's version of what was said and done at the time Shannon interviewed Meyer, that there resulted an extension of the note or a reinstatement of the policy. Meyer knew at that time that his policy was and had been suspended and inoperative since December 15, 1932. He also had been reminded twice of this fact and asked to pay his note. Once in February, 1933, and again in April, 1933. He made no response to these notices, nor did he communicate in any way with the company or any of its agents with respect to them or to the matter of the reinstatement of his policy. He knew from his own experience the practice that was followed when notes were extended and a policy reinstated. After he was advised in April that steps would be taken to collect the note, Shannon went to see him. He went to collect the note and not to write a new policy or renew the old one. The note was

past due. It was collectible in full at that time and a valid obligation even if the policy were never reinstated. See Meyer v. National F. Ins. Co. 67 N. D. 77, 269 N. W. 845. If Meyer were solvent he would have to pay them or at some future time. While the note was unpaid he was carrying his own insurance. He knew all this. Yet he said not a word about reinstating the policy. He let the matter ride as it was before. Taking plaintiff's version of the conversation had when Shannon asked for payment of the note, plaintiff said he could pay it but that money was scarce and he could use it for other purposes, to which Shannon replied, "That's all right, you can pay it this fall." Certainly under all the circumstances there was nothing in this conversation from which Meyer or anyone else might infer that the policy was to be reinstated.

In view of what is said above we need not consider counsel's further contention with respect to the matter of ratification by the defendant company.

The petition is denied.

BURKE, MORRIS, CHRISTIANSON, and BURR, JJ., concur.